C. E. JEFFCOAT et ux., Appellants,

v.

Dr. John R. PHILLIPS, Appellee.

No. 7812.

Court of Civil Appeals of Texas.

Texarkana.

June 27, 1967.

Rehearing Denied July 25, 1967.

John H. Holloway, Nipper & Knox, Houston, for appellants.

W. N. Arnold, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, William L. Durham, Murfee & Hoover, Houston, for appellee.

FANNING, Justice.

C. E. Jeffcoat and wife, Mary Jeffcoat, sued Dr. John R. Phillips for alleged ordinary and gross negligence in the performance of surgery upon Mrs. Jeffcoat and for alleged unauthorized surgery on Mrs. Jeffcoat. A jury trial resulted in the submission of no negligence or gross negligence issues on Dr. Phillips and in a verdict in favor of defendant on answers to issues inquiring about unauthorized surgery. The damages issue was answered "none". Judgment was entered that plaintiffs take nothing. Plaintiffs have appealed.

Appellants have briefed their points 1 to 4 inclusive, together. These four points are lengthy and multifarious. Point One contends to the effect that the trial court erred in entering a take-nothing judgment based upon the jury finding to Special Issue 1 that defendant did not perform an operation for removal of veins of the legs of Mrs. Jeffcoat without her consent "for the separately assigned errors" consisting of seven listed alleged errors. Point 2 contends to the effect that the trial court erred in entering judgment based upon the jury finding to Special Issue 4, that defendant did advise Mrs. Jeffcoat of the intended surgery for removal of the veins so as to permit her to elect to undergo such operation "for the separately assigned errors", consisting of five listed alleged errors. Point 3 contends to the effect that the trial court erred in a take-nothing judgment based upon the jury's finding to Special Issue 5, whereby the jury found that the defendant

reasonably and adequately warned Mrs. Jeffcoat that she might expect scarring on her legs from the operation "for the separately assigned errors" consisting of four alleged errors. Point 4 contends to the effect that the trial court erred in entering a take-nothing judgment based upon the finding to Special Issue No. 7, that defendant informed Mrs. Jeffcoat that he would remove the ulcer from her right leg and strip and excise the varicose veins in her right leg, and if everything turned out well, he would strip and excise the veins in her left leg "for the separately assigned errors", listing seven alleged errors.

While we think appellants' points One to Four, inclusive, are multifarious and are not in accordance with the briefing rules, nevertheless we have examined the points, statements, arguments and authorities listed thereunder, and will write upon what we understand to be some of appellants' main contentions under the numerous matters raised under said points, sub-points, and contentions.

Special Issues Nos. 1, 4, 5 and 7 and the jury's answers thereto were as follows:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that Dr. John R. Phillips performed an operation for removal of veins of the legs of Mrs. Mary Jeffcoat without her consent on January 24, 1962?

"To which the jury answered, 'We do not'.

### "SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that the defendant, Dr. John R. Phillips, failed to advise the plaintiff, Mrs. Mary Jeffcoat, that the defendant intended to perform surgery upon her legs by cutting into her legs and removing the veins which he removed, at a time prior to the surgery so as to permit the plaintiff to elect whether she desired to undergo such proposed surgery for removal of the veins?

"To which the jury answered, 'We do not'.

### "SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the defendant, Dr. John R. Phillips, prior to the surgery of January 24, 1962, failed to reasonably and adequately warn Mrs. Mary Jeffcoat that she might reasonably expect scarring on her legs from such operation?

"To which the jury answered, 'We do not'.

### "SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that prior to the surgery in question the defendant, Dr. John R. Phillips, informed the plaintiff, Mrs. C. E. Jeffcoat, that he would remove the ulcer from her right leg and strip and excise the varicose veins in her right leg, and if everything turned out well, he would strip and excise the varicose veins in her left leg?

"To which the jury answered, 'We do'."

As we view it, Special Issues Nos. 1, 4, 5 and 7 presented to the jury the controlling questions on the issue of unauthorized surgery or failure to obtain informed consent from Mrs. Jeffcoat.

With respect to the "no evidence questions" raised by appellant with respect to Issues Nos. 1, 4, 5 and 7, they are overruled. The testimony of defendant Doctor Phillips constitutes some evidence of probative force. According to his testimony he fully explained to Mrs. Jeffcoat about the operations which were eventually performed, that this information was discussed with her several days before surgery, that he told Mrs. Jeffcoat specifically about the necessity for making incisions in large troublesome veins; that Mrs. Jeffcoat checked into the hospital after being previously given full information of the intended operations

by Dr. Phillips, that she had been reasonably warned and adequately by the discussion in question about the likelihood of the scarring of her legs, and Dr. Phillips further testified to the effect that the operations which were performed had been fully explained to Mrs. Jeffcoat by him.

There was also written evidence of the consent of Mrs. Jeffcoat to the surgery in question consisting of an authorization signed by Mrs. Jeffcoat specifically authorizing a bilateral vein ligation, together with such necessary and closely connected surgical procedures as would be caused in the course of the operation.

■■■ If appellee's testimony is to be believed, he proved both oral and written consent on the part of Mrs. Jeffcoat to the operations in question, as well as full informed consent by his oral testimony. The jury was the judge of the credibility of the witnesses and of the weight to be given their testimony, and the jury apparently believed Dr. Phillips' testimony with respect to the matters in dispute with reference to Issues 1, 4, 5 and 7, and Dr. Phillips' testimony constituted some evidence of probative force. Furthermore, the burden of proof on Special Issues Nos. 1, 4, 5 and 7 was on plaintiffs. We hold that there was evidence of probative force to support the jury's findings to Special Issues Nos. 1, 4, 5 and 7, and that the same was sufficient.

Appellants also contend to the effect that the findings of the jury to Special Issues Nos. 1, 4, 5 and 7 were so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. In considering these contentions we have examined the entire record in this cause in the light of the rules enunciated by the Supreme Court of Texas in the case of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Mrs. Jeffcoat testified to the effect that she did not orally consent to the operations in question performed by Dr. Phillips, and that she signed the written authorization form in blank. Mrs. Jeffcoat testified to the effect that she had consented to an operation for the sole purpose of removal of an ulcer caused by a burn. She had been a patient of Dr. Phillips and had had previous surgery by Dr. Phillips as shown by the record, for conditions other than the operations complained of and sued upon. She also testified to the effect that Dr. Phillips on other occasions had recommended to her to allow him to operate on her legs for varicose veins, but that she in each instance refused to permit such surgery. Mrs. Jeffcoat also contradicted Dr. Phillips' testimony with reference to "informed consent", and warnings from Dr. Phillips that she might reasonably expect scarring on her legs from such operation, and in short Mrs. Jeffcoat contradicted Dr. Phillips' testimony on most of the material matters, thus leaving issues for the jury to determine. It appeared from Dr. Phillips' testimony and other medical testimony in the case that Mrs. Jeffcoat had severe varicose veins on one leg and somewhat less severe on the other leg. It was Dr. Phillips' testimony that both legs needed the operation, and that it was necessary to excise as well as strip the veins and that the operation was not a "routine operation" and was one that required excising and that scarring of the legs would result therefrom. Other doctors corroborated Dr. Phillips to the effect that the operation was not a "routine operation". Photographic exhibits show the scarring on Mrs. Jeffcoat's legs.

After carefully reviewing the entire record in this cause in the light of the rules of law enunciated in the case of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), we hold that the jury's answers to Special Issues Nos. 1, 4, 5 and 7, were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

■■■ Appellants also contend to the effect that because there was no proof that Mr. Jeffcoat gave his consent to the operations in question performed on his wife, that

coverture was a bar to a valid legal agreement on the part of the wife to consent to the operations in question. In other words, appellants contend to the effect that the failure of Dr. Phillips to obtain Mr. Jeffcoat's permission is reason for reversal of the judgment of the trial court. Appellants cite no authority in support of such proposition, and we have found no authority to support such a proposition. The record shows Mrs. Jeffcoat was an adult married woman and no question appears or is raised as to her mental capacity. As we view the matter, appellants' contention in this regard is without merit. A person does not fall within the classification of "property", and Mrs. Jeffcoat, a person, had the right to consent to the operations in question if she chose to do so, and her husband's consent was not necessary.

Appellants' other contentions raised under their points 1, 2, 3 and 4 have been considered and are deemed to be without merit.

Appellants' points 1, 2, 3 and 4 are overruled.

Appellants by their point 5 contend to the effect that the trial court erred in entering a take-nothing judgment based upon the jury's finding to the damage issue "none" and listed thereunder are five sub-points.

■ Since the liability issues were answered unfavorably to the plaintiffs, the answer to the damages issue does not present reversible error under the record in this case. See the following authorities: Southern Pine Lumber Company v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939); Dillon v. Moore, Tex.Civ.App., 367 S.W.2d 70, no writ (1963); Benton v. B. F. Walker Truck Line, Inc. et al., Tex.Civ.App., 410 S.W.2d 822, writ ref., n. r. e. (1967). Appellants' 5th point is overruled.

Appellants by their points 6, 9 and 10 complain of the failure of the trial court to submit plaintiffs' requested issues 4, 5, 10, 11, 12 and 13, which issues inquire about the alleged neglignce of appellee in making the incision and operation in question, etc.

■ Expert testimony is essential in medical malpractice cases based on negligence except where the injury is so plain as to be within the common knowledge of laymen. Henderson v. Mason, Tex.Civ.App., 386 S.W.2d 879, no writ (1964). Such expert testimony must come from a doctor of the same school of medicine as that of the defendant, Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949); however this rule has been qualified to the extent that doctors of different schools may testify in malpractice cases: (1) where the particular subject of inquiry is common to and equally recognized in both schools of practice; and (2) where the subject of inquiry relates to the manner of use of electrical or mechanical appliances which are of common use in both schools of practice. Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 233 (1953). In this connection see the recent case of Drummond v. Hodges, 417 S.W.2d 740, rendered May 26, 1967, by the Dallas Court of Civil Appeals.

■ The medical experts who testified in the case confirmed the fact that the operation in question performed by Dr. Phillips was not a "routine" operation and that excision in some cases was proper. As we view the evidence, there was no evidence of probative force from any of the medical experts to the effect that they could say that the operation as actually performed by Dr. Phillips was improper. As we view it, there was no medical evidence of probative force to show "negligence" on the part of Dr. Phillips in performing the operation in question. Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949). The case of Wilson v. Scott, Tex.1967, 412 S.W.2d 299, cited by appellants, is a case dealing with "informed consent", with respect to a patient's cause of action against a physician for failure to make reasonable disclosure of risks incident to operation as one of malpractice for the physician's failure to conform to medical standards in obtaining the patient's consent. We have carefully read the Wilson v. Scott case and find nothing in it which militates against any of our holdings in this case.

**908**

On the question of "informed consent", the burden of proof on the issues raising these matters was on plaintiffs, and the jury answered these issues against plaintiffs on evidence of probative force, which was sufficient and which was not.so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. It is our holding also that there was no evidence of competent probative force to authorize the submission of any negligence issues against Dr. Phillips.

Appellants' points 6, 9, and 10, and all contentions made thereunder, are overruled.

Appellants' remaining points and contentions have all been considered and are overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.