**ST. PAUL MEDICAL CENTER, f/k/a St. Paul Hospital, and Helen Dobbs, Appellants,**

v.

**Dennis CECIL and Kathleen Cecil, Individually, and as Next Friend For and in Behalf of Steven Cecil, A Minor, Appellees.**

No. 05–91–01036–CV.

Court of Appeals of Texas, Dallas.

Nov. 19, 1992.

Stephen A. Khoury, Dallas, for appellees.

James A. Williams, Dallas, for appellants.

Before THOMAS, CHAPMAN, and WIGGINS, JJ.

## OPINION

THOMAS, Justice.

St. Paul Medical Center (the hospital) and Helen Dobbs (the nurse)[1] appeal from a judgment rendered in favor of Dennis and Kathleen Cecil, individually, and as next friend for Steven Cecil, their minor son (collectively appellees). In the first eight points of error, appellants challenge the jury's findings of negligence, proximate cause, and rehabilitation and special-education costs. In their final point of error, appellants assert that the trial court erred in admitting certain expert opinion testimony because the nature and extent of the opinions were not adequately disclosed during the discovery process. We overrule all points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

During her pregnancy, Kathleen was treated by Dr. David Cook, an obstetrician. The pregnancy appears to have been normal and uneventful.

The record reveals the following relevant events surrounding Kathleen's labor and delivery:

1. About 11:00 p.m. on January 28, 1983, Kathleen believed that her water broke. Her husband called Dr. Cook, who instructed them to go to the hospital.

2. Upon arriving at the hospital, Kathleen went to labor and delivery, introduced herself to the nurse, and told the nurse that her water had broken. The nurse placed Kathleen in a labor room and told her to put on a gown and to get into bed.

3. At 12:10 a.m. on·January 29, 1983, the nurse performed a pelvic examination, assessed Kathleen's vital signs, contractions, and other conditions, and

---

1. We will refer to the hospital and the nurse collectively as "appellants."

checked the fetal heart rate by stethoscope.

4. About 1:30 a.m., at the nurse's request, Dr. Michael Steinkampf, a hospital resident, performed a speculum examination. Dr. Steinkampf determined that Kathleen's membranes had ruptured and that meconium[2] was present.

5. About 2:45 a.m., the nurse attached an external electronic fetal monitor (EFM) to record the heart rate. The nurse watched the printout strip and then left the room.

6. At 3:20 a.m., Dr. Steinkampf installed an internal EFM. The EFM printout showed severe fetal hypoxia (decrease in oxygen), bradycardia (slow fetal heart rate), and more meconium. Dr. Steinkampf told the nurse to notify Dr. Cook and to prepare Kathleen for emergency cesarean section.

7. After Dr. Cook arrived at the hospital, he decided to use an anesthesiologist rather than a certified nurse anesthetist on call at the hospital, which delayed the delivery.

8. At 4:57 a.m., Dr. Cook delivered Steven by cesarean section.

Steven was born with hypoxic ischemic encephalopathy (HIE), which is a type of brain damage caused by prolonged hypoxia. As a result, he has severe and permanent neurological deficits, cognitive deficits, hearing loss, physical and motor impairment, visual/spacial and visual/perceptual impairment, learning disabilities, and other disabilities associated with cerebral palsy.

Appellees sued Dr. Cook, Dr. Steinkampf, the nurse, and the hospital for negligence. Dr. Cook settled with appellees before trial. The jury found that the negligence of the nurse and the hospital proximately caused appellees' damages and found the nurse and the hospital each fifty-percent negligent. The jury also found that the negligence of Dr. Steinkampf did not proximately cause appellees' damages. The jury awarded appellees $25,000 for past physical pain and mental anguish; $50,000 for future physical pain and mental anguish; $25,000 for past physical impairment; $50,000 for future physical impairment; $1,200,000 for loss of earning capacity; $36,688.26 for medical care provided in the past; $30,000 for rehabilitative care required in the future; and $30,000 for special-education costs required in the future. After crediting the settlement received from Dr. Cook, the trial court entered judgment in favor of appellees for $1,033,879.76.

## NEGLIGENCE CLAIM AGAINST THE HOSPITAL

█ In the first point of error, appellants argue that there is no evidence or, alternatively, factually insufficient evidence to support the jury's finding that the hospital was negligent independent of any conduct of any other defendant.[3] They argue in their second point that this finding is against the great weight and preponderance of the evidence.[4] Specifically, appellants complain that appellees introduced no expert testimony on the applicable standard of care for hospitals in the community. They conclude that, because no standard of care was established concerning the allegations against the hospital individually, the jury had to construct or assume its own standard of care. Therefore, appellants contend that any finding of negligence on the part of the hospital individual-

---

2. Meconium is fecal matter that is passed into the amniotic fluid due to some type of stress on the fetus.

3. Appellees also alleged that the hospital was vicariously liable for the negligence of its employees.

4. Appellants raise great-weight-and-preponderance arguments in their second, fourth, sixth, and eighth points of error. Because the appellees, as plaintiffs below, had the burden of proof on the issues of negligence, proximate

cause, and rehabilitation and special-education costs, appellants' attacks on the jury findings should be that there is no evidence or factually insufficient evidence to support the jury findings. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied). Accordingly, we need not address whether the complained-of findings were against the great weight and preponderance of the evidence.

ly was based on conjecture. Appellees argue that the issue of the hospital's negligence involved matters that the jury could decide without expert testimony.

A no-evidence point is a question of law. In deciding that question, we consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). The jury's findings must be upheld if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex. 1979). Evidence is no more than a scintilla when it is "so weak as to do no more than create a mere surmise or suspicion of [the fact's] existence." *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970) (quoting Calvert, *"No Evidence"* and *"Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960)). If the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, however, then there is some evidence or, in other words, more than a scintilla of evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In reviewing a factual-insufficiency point, we consider all of the evidence, including any evidence contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). This Court must consider, weigh, and compare all of the evidence in the record pertinent to the issue under consideration. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex.1989) (per curiam); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). A finding can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). When both no-evidence and insufficient-evidence points are raised, we are to rule upon the no-evidence point first. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

In making its findings, the jury weighs the evidence, assesses the credibility of witnesses, and resolves conflicts and inconsistencies. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The jurors are the judges of the facts proved and of the reasonable inferences to be drawn therefrom. *Lockley v. Page*, 142 Tex. 594, 598, 180 S.W.2d 616, 618 (1944). This Court is not a factfinder, and we cannot substitute our judgment for that of the jury, even if a different answer could be reached on the evidence. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

The only issue raised by appellants under this point of error is whether appellees needed expert testimony concerning the standard of care for hospitals to prove a breach of duty giving rise to liability for negligence. In medical malpractice cases, breach of duty normally is established through expert testimony that the health care provided fell below the standard of care applicable to the medical practice in question. *See Martisek v. Ainsworth*, 459 S.W.2d 679, 680 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.). However, the standard of nonmedical, administrative, ministerial, or routine care at a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard. *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343, 349 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (quoting *Cramer v. Theda Clark Memorial Hosp.*, 45 Wis.2d 147, 172 N.W.2d 427, 428 (1969)).

Appellants cite several cases to support their contention that the hospital's standard of care had to be proved by expert testimony. *See, e.g., Coan v. Winters*, 646 S.W.2d 655 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (care and treatment of patient with berry aneurysm); *Williford v. Banowsky*, 563 S.W.2d 702 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.) (personal injuries resulting from cut received while obtaining dental treatment); *Lee v. Andrews*, 545 S.W.2d 238 (Tex.Civ.App.—

Amarillo 1976, writ dism'd by agr.) (failure to diagnose and treat infection resulting from post-operative catheterization); *Cleveland v. Edwards*, 494 S.W.2d 578 (Tex.Civ. App.—Houston [14th Dist.] 1973, no writ) (failure to correct improper closing of incision resulting in ventricle hernia); *Jeffcoat v. Phillips*, 417 S.W.2d 903 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.) (performance of surgery). We note that these cases involve the performance of medical procedures by doctors. Therefore, the nature of the alleged negligence was not within the common knowledge of laymen.

Here, appellees alleged that the hospital was negligent because it assigned the nurse to labor and delivery on the night shift when it knew or should have known that the nurse was not qualified to perform the tasks required by this position and that she sometimes fell asleep at her station. They further alleged that the hospital was negligent in failing to adequately supervise the nurse. To support these allegations, appellees introduced the hospital's employee evaluation forms. These evaluations indicated that, about three and one-half months before Steven's birth, the hospital rated the nurse as an unsatisfactory employee, that the nurse sometimes fell asleep while on duty, that she had trouble using EFMs, and that she was reluctant to seek guidance from her supervisors concerning maternal-child care and problems in labor and delivery. Laymen, aided by these evaluations and guided by their common sense, could fairly determine whether the hospital was negligent in its supervision and assignment of the nurse.

We conclude that expert testimony was not necessary to establish that the hospital was negligent in retaining, supervising, and assigning the nurse. As reflected in the testimony outlined above, there is more than a scintilla of evidence to establish the hospital's negligence in this regard. Additionally, we conclude that the finding is not so contrary to the overwhelming evidence as to be clearly wrong and unjust. Accordingly, we overrule the first point.

## PROXIMATE CAUSE

In the third point of error, appellants complain that there is no evidence or, alternatively, factually insufficient evidence to prove that the negligence, if any, of the hospital and the nurse proximately caused Steven's injuries. Although appellants assert a broad point of error contending that the evidence does not support the jury's verdict, they specifically argue only that (1) the hospital is not liable for the performance of health-care functions, (2) the nurse is not liable for performance of treatments prescribed by a licensed physician, and (3) the testimony of appellants' experts was inconsistent and conflicting. We confine our review to these specific contentions.

Appellants first argue that a hospital cannot incur liability directly for the performance of health-care functions. They contend that the standards of care and facts established at trial concern the medical care provided by physicians and the nurse, which the hospital cannot undertake individually. They conclude that there is no evidence of negligence outside the provision of care by a physician or the nurse and no basis for finding the hospital negligent. As stated under the first point of error, appellants alleged that the hospital was negligent in assigning and supervising the nurse. These allegations do not concern the medical care provided by a physician or the nurse. Rather, they involve assignment and supervision of an employee, which is a matter undertaken by the hospital individually. Thus, we conclude that this contention is without merit.

■ Appellants next assert that the nurse could only administer medicines and treatments as prescribed by a licensed physician. Therefore, they argue that, because the nurse followed a physician's instructions in administering treatment to Kathleen, only the physician is liable for that treatment. They cite, without argument or explanation, article 4518, section 5(c) of the Texas Revised Civil Statutes to support this contention. *See* TEX.REV.CIV. STAT.ANN. art. 4518, § 5(c) (Vernon Supp. 1992). Article 4518 of the Texas Revised

Civil Statutes is entitled "Accreditation of schools of nursing and educational programs; certification of graduates; examination by Board and requirement of registration; continuing education." Section 5 defines "Professional Nursing" as the performance for compensation of any nursing act "(c) in the administration of medications or treatments as ordered by a licensed physician...." Tex.Rev.Civ.Stat.Ann. art. 4518, § 5(c). We do not interpret this section to relieve the nurse of liability for her own negligence, if any, in administering treatment to Kathleen simply because such treatment was prescribed by a physician.

Finally, appellants argue that because the testimony of Drs. Tom Barden and Eilleen Ouellette was internally inconsistent and conflicting, their testimony created only a mere surmise or suspicion as to causation. Therefore, appellants argue that the experts' testimony amounted to no evidence. Appellees reply that the expert testimony and the voluminous record, taken as a whole, unequivocally establish that the jury's proximate-cause findings are based upon reasonable medical probabilities.

It is well established that the jury weighs the evidence, assesses the credibility of witnesses, and resolves conflicts and inconsistencies. *McGalliard*, 722 S.W.2d at 697. This Court is not a factfinder, and we cannot substitute our judgment for that of the jury, even if a different answer could be reached on the evidence. *Clancy*, 705 S.W.2d at 826. Appellate courts are without authority to set aside a jury verdict, particularly on questions of proximate cause in damage suits, upon conflicting facts. *Biggers v. Continental Bus Sys.*, 157 Tex. 351, 303 S.W.2d 359, 363 (Tex. 1957). Where the evidence conflicts, the jury's decision will be left undisturbed. *Horvath v. Baylor Univ. Medical Ctr.*, 704 S.W.2d 866, 868 (Tex.App.—Dallas 1985, no writ). Thus, this Court cannot reverse the jury's findings, even if appellants are correct in their contention that the experts' testimony was inconsistent and conflicting.

Dr. Barden, a specialist in maternal-fetal medicine, testified that the nurse was negli-gent in failing to render adequate care in monitoring Steven and detecting his hypoxia, which subjected him to prolonged insult and delayed his delivery. He further stated that application of the EFM by a nurse with proper training would have detected Steven's condition and would have required his delivery as early as 1:30 a.m. on January 23, 1983. This would have lessened the damage. In Dr. Barden's opinion, the nurse's negligence delayed delivery, subjecting Steven to prolonged hypoxic insult. Dr. Ouellette, a board-certified pediatric neurologist, testified that, in reasonable medical probability, Steven's damage occurred at 3:20 a.m. on January 29, 1983 and afterward when he suffered an acute hypoxic insult. In Dr. Ouellette's opinion, Steven would not have shown his present neurologic damage had he been delivered before 3:20 a.m. Appellants' expert, Dr. Roy Elterman, stated his opinion that it is "very uncommon" for an acute intrapartum event right around the time of birth to cause neurological injury and that ninety percent of the children that have neurological problems suffer from a preexisting insult. He further stated that, in full-term newborns who suffer an acute hypoxic insult, the brunt of the injury is in the cerebral area, resulting in massive atrophy; that Steven had no atrophy; and that "[t]here is no way that [Steven] could have had a normal brain, suffered a hypoxic insult at the time of birth and had a normal cortex."

We conclude that there is more than a scintilla of evidence that the negligence of the nurse and of the hospital proximately caused Steven's damage. Further, we conclude that the finding is not so contrary to the overwhelming evidence as to be clearly wrong and unjust. Accordingly, we overrule the third point.

## SPECIAL–EDUCATION AND REHABILITATION COSTS

In the fifth and seventh points, appellants contend that there was no evidence or, alternatively, insufficient evidence to support the jury's award of rehabilitation

and special-education costs. Again, we confine our disposition of these points to the specific assertions raised.

Dr. Leon Peek testified that he practices neuropsychology and rehabilitative psychology, which involve the assessment, rehabilitation, and treatment of people with brain and nervous-system damage. He further stated that he formulated a treatment plan specifically tailored to Steven's disabilities. The plan included special education in a private school adapted for children with brain damage and rehabilitative care to provide physical and occupational therapy. Dr. Peek testified concerning the costs for special education and rehabilitative care. The jury awarded $30,000 for special education and $30,000 for rehabilitation, which was within the amounts testified to by Dr. Peek.

Appellants first complain that Dr. Peek's testimony concerning special-education costs was hearsay because it was not based on his personal knowledge. Dr. Peek testified that, in formulating the special-education costs, he contacted two special schools in Dallas, received tuition costs from those schools, and averaged the costs. Appellees reply that Dr. Peek could base his testimony on hearsay evidence pursuant to rule 703 of the Texas Rules of Civil Evidence.

Appellants cite *Moore v. Grantham*, 599 S.W.2d 287, 289 (Tex.1980), for the proposition that an expert cannot base his opinion upon inadmissible hearsay evidence. However, the promulgation of rule 703 of the Texas Rules of Civil Evidence, effective September 1, 1983, overturned the decision in *Moore* and like holdings. *Liptak v. Pensabene*, 736 S.W.2d 953, 957 (Tex.App.—Tyler 1987, no writ). Rule 703 provides as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.*

TEX.R.CIV.EVID. 703 (emphasis added). Thus, even if Dr. Peek had no personal knowledge of the special-education costs about which he testified, he could base his opinions concerning those costs on hearsay if the data is of the type reasonably relied on by experts in his particular field. TEX. R.CIV.EVID. 703; *Moore v. Polish Power, Inc.*, 720 S.W.2d 183, 191 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Whether experts in the field reasonably rely on such data is a matter for preliminary determination by the trial court pursuant to rule 104(a) of the Texas Rules of Civil Evidence, and this Court looks to the record as a whole in reviewing the trial court's preliminary determination. *Moore*, 720 S.W.2d at 192. Dr. Peek testified that he and other experts rely on costs obtained from schools to prepare treatment plans and to adapt the plans to their patients' available resources. Because there is evidence that experts in Dr. Peek's field rely on tuition costs obtained from schools in formulating treatment plans, we conclude that Dr. Peek's testimony was admissible under rule 703.

Appellants further contend that Dr. Peek's testimony was speculative. Their complaint is a conclusion without citation to the allegedly speculative testimony or an explanation of why the testimony was speculative, erroneous, or harmful. Consequently, appellants have failed to adequately direct this Court to the alleged error. *See* TEX.R.APP.P. 74(d) & (f); *cf. Allright, Inc. v. Pearson*, 711 S.W.2d 686, 688 (Tex. App.—Houston [1st Dist.] 1986), *aff'd in part and rev'd in part on other grounds per curiam*, 735 S.W.2d 240 (Tex.1987). Accordingly, they have waived this contention.

Appellants also argue that Dr. Peek's opinion of what the tuition would be in a private school in Dallas County went beyond the scope of the opinions disclosed in his report that was produced in response to appellants' written discovery requests. Neither appellants' brief nor their objection in the portion of the record cited to this Court explain how Dr. Peek's testimony concerning tuition in a private school went beyond the scope of his report. Neverthe-

less, we have reviewed Dr. Peek's report. In that report, Dr. Peek set forth the source of his information and the costs for the special education that, in his opinion, Steven would require. We find this contention to be without merit.

Finally, appellants assert that the jury's award of rehabilitation costs is without proper evidentiary foundation. They complain that Dr. Peek testified concerning the need for physical therapy although he is not a physical therapist. Appellants' brief contains no citation of authority or argument in support of their contention. Accordingly, it is waived. Further, appellants did not object at trial to Dr. Peek's qualifications or to his testimony concerning the costs of rehabilitative care. To preserve error for appeal, the complaining party must specifically object when the testimony is offered and obtain a ruling on the objection. *MBank Dallas, N.A. v. Sunbelt Mfg.*, 710 S.W.2d 633, 638 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Appellants' failure to object to Dr. Peek's qualifications waived any complaint on this basis. We overrule the fifth and seventh points.

## FAILURE TO SUPPLEMENT DISCOVERY RESPONSES

Finally, appellants argue in the ninth point of error that the trial court erred in admitting opinion testimony of appellees' experts because the extent of those opinions was not disclosed. They contend that, absent a showing of good cause, the experts' testimony should have been excluded under rule 215(5) of the Texas Rules of Civil Procedure.

Rule 166b(6) of the Texas Rules of Civil Procedure requires a party to supplement its discovery responses, including responses to inquiries regarding the identity of an expert or the subject matter of the expert's testimony. Tex.R.Civ.P. 166b(6)(b). If a party fails to supplement its response, then the trial court must exclude the testimony unless the party affirmatively establishes good cause for the failure to supplement. Tex.R.Civ.P. 215(5); *see Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex. 1990) (per curiam).

Appellants refer this Court to several places in the statement of facts where they objected to the testimony of Drs. Barden and Ouellette. However, appellants make no attempt to go beyond these bare record citations to argue or to explain to this Court how the complained-of testimony exceeded the scope of the experts' opinions as disclosed in response to discovery requests. They argue only that appellees failed to timely disclose the extent of the experts' testimony and that, therefore, appellees were required to show good cause for their failure to timely supplement their discovery responses. However, we do not reach the failure-to-show-good-cause issue until we determine whether appellees in fact failed to properly supplement their responses to appellants' discovery requests. Thus, appellants have failed to brief one of the threshold issues required to maintain their complaint. Accordingly, they have failed to comply with rule 74(f) of the Texas Rules of Appellate Procedure. Tex. R.App.P. 74(f) (argument must include "such discussion of the facts ... relied upon as may be requisite to maintain the point at issue").

Further, appellants have failed to cite us to the place or places in the record where we can find all of the information necessary to review their complaint. They refer us, for example, to places in the transcript containing what they term appellees' "attempt to supplement [the] expert opinion" of Drs. Barden and Ouellette and affidavits by and depositions of these experts. They complain that certain disclosures by appellees of the extent of the opinions to be given by their experts were untimely. They do not, however, point us to the place or places in the record where we can find other disclosures of the scope of these experts' opinions. Assuming, without deciding, that some of appellees' supplemental discovery responses were in fact untimely, resolution of appellants' point of error requires a comparison of the complained-of testimony with appellees' timely responses to appellants' discovery requests. Otherwise, we cannot determine whether the experts' opinions at trial ex-

ceeded the opinions disclosed in response to appellants' pretrial discovery requests. Appellants have failed to meet their burden to show that the record supports their contentions and to specify the place or places in the record where the matters complained of or relied upon may be found. *See Peterson v. Dean Witter Reynolds, Inc.,* 805 S.W.2d 541, 549 (Tex.App.—Dallas 1991, no writ); *Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).[5] We have no duty to search the entire appellate record to locate the information necessary to determine whether appellants' complaint has any merit.[6] *See Peterson,* 805 S.W.2d at 549; *Most Worshipful Prince Hall Grand Lodge,* 732 S.W.2d at 412.

Finally, we have reviewed the portions of the record cited by appellants and conclude that no reversible error has been shown. Accordingly, the ninth point is overruled. We affirm the trial court's judgment.

---

5. These cases deal with an appellant's failure to cite the place in the record where any evidence supporting the complaint can be found. We discern no reason not to apply the same rule to an appellant who, while citing to parts of the record, fails to refer this Court to portions of the record where we can find all of the information necessary to dispose of the point of error.

6. The record contains a 2629–page statement of facts, a 710–page transcript, and sixty exhibits.