Revised January 21, 2002

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 00-51101**
_____

**ANTONIO LEBRON, et al.,**

**Plaintiffs-Appellees,**

**versus**

**UNITED STATES OF AMERICA, et al.,**

**Defendants,**

**UNITED STATES OF AMERICA,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Western District of Texas
_____

January 15, 2002

Before DAVIS and JONES, Circuit Judges, and BARBOUR,[*] District Judge.

EDITH H. JONES, Circuit Judge:

Carmen and Antonio Lebron sued the United States individually and as next friends of their daughter, Karina, under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq., for damages suffered as a result of an Army doctor's medical malpractice at Fort Hood, Texas. The doctor's negligent delivery

_____

[*]District Judge of the Southern District of Mississippi, sitting by designation.

of Karina left her with severe, permanent brain damage.  The Government admitted liability but contested damages.  After a bench trial, the district court awarded the plaintiffs $32,676,410 in all: $20,647,488 for Karina; $4,320,000 each to Carmen and Antonio for medical and attendant care for Karina until her age of majority; an additional $1,783,156 to Carmen; and an additional $1,605,766 to Antonio.[1]  The court also awarded the plaintiffs costs, including fees for services rendered by Karina Lebron's guardian <u>ad litem</u> (GAL).

The Government appeals on three grounds, contending (1) that the "maximum recovery rule" requires a reduction of $9.4 million in certain intangible damages awarded to the three plaintiffs; (2) that because the $20.6 million in damages awarded to Karina exceeds the $20 million specified in the amended administrative claim that the Lebrons filed on her behalf, the $20.6 million should be reduced to $20 million; and (3) that the cost of certain legal services provided by the GAL, who is an

---

[1]    Karina Lebron's $20.6 million award included about $10.6 million for medical and attendant care after her eighteenth birthday and about $1 million for her loss of earning capacity, plus the following noneconomic damages:

```
$ 1.5 million for past and future pain/suffering,
  2.0 million for past and future mental anguish,
  2.5 million for past and future physical impairment,
  2.0 million for past and future mental impairment,
  1.0 million for past and future disfigurement
$ 9.0 million - total
```

Each parent received certain economic damages plus $1.5 million apiece for loss of consortium resulting from Karina's injuries.

attorney, should have been deducted from Karina's recovery and should not have been taxed as costs to be paid by the Government. The Government does not contest any other damages awards.

We conclude as follows. (1) The maximum recovery rule requires a reduction in the awards contested by the Government, and a remand is necessary to clarify whether portions of Karina's medical expenses award are duplicative. (2) Because the Lebrons have not met the requirements of 28 U.S.C. § 2675(b) for obtaining damages exceeding the amount stated in the administrative claim, Karina cannot recover more than $20 million. (3.) The district court erred in failing to determine what part of the services rendered by the GAL are legal fees to be awarded out of the recovery. On remand, the court must make this determination.

**(1) Whether the "Maximum Recovery Rule"
Requires a Reduction of $9.4 Million in
Certain Intangible Damages**[2]

A district court's damages award is a finding of fact, which this court reviews for excessiveness using the clear error standard. <u>Douglass v. Delta Air Lines, Inc.</u>, 897 F.2d 1336, 1339 (5th Cir. 1990). Put otherwise, "[w]e do not reverse a verdict for excessiveness except on the strongest of showings, but when a jury's award exceeds the bounds of reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so." <u>Dixon v. Int'l Harvester Co.</u>, 754 F.2d 573, 590 (5th Cir. 1985). "[W]hen this court is left with the perception that the verdict is clearly excessive, deference must be abandoned." <u>Eiland v. Westinghouse Elec. Corp.</u>, 58 F.3d 176, 183 (5th Cir. 1995). This

---

[2]    The Lebrons preliminarily suggest that the Government waived its arguments on this issue by failing to raise them in a motion for new trial or in some other post-judgment motion. Ordinarily "there can be no appellate review of allegedly excessive or inadequate damages if the trial court was not given the opportunity to exercise its discretion on a motion for a new trial." <u>Bueno v. City of Donna</u>, 714 F.2d 484, 493-94 (5th Cir. 1983). Yet we agree with the Eleventh Circuit that "[w]here, as here, damages are set by the judge instead of a jury, issues raised during trial and ruled on by the trial court need not be raised again in a motion for new trial in order to preserve them for review on appeal." <u>Johnson v. United States</u>, 780 F.2d 902, 907 (11th Cir. 1986) (vacating FTCA award). The record shows that the Government raised the issue of how to avoid excessive damages awards in a pre-trial memorandum that cited and applied this circuit's maximum recovery rule. In its memorandum and order setting forth findings of facts and conclusions of law pursuant to Fed. R. Civ. P. 52(a), the district court responded to the Government's invocation of the rule. This court, therefore, will consider whether the damages awards were excessive.

4

court's power to grant a remittitur of excessive damages is the same as the district court's. <u>Dixon</u>, <u>id.</u>

"[W]e apply the loosely defined 'maximum recovery rule' when deciding whether a remittitur is in order. This judge-made rule essentially provides that we will decline to reduce damages where the amount awarded is not disproportionate to at least <u>one factually similar</u> case from the relevant jurisdiction." <u>Douglass</u>, 897 F.2d at 1344 (emphasis in original).[3] The rule applies regardless of whether the award was made by a jury. <u>Id.</u> at 1337, 1339 n.3, 1344. The rule "does not necessarily limit an award to the highest amount previously recognized in the state;" indeed, the rule "does not become operative unless the award exceeds 133% of the highest previous recovery in the [relevant jurisdiction]" for a factually similar case. <u>Id.</u> at 1344 n.14. Because the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited "if unique facts are present that are not reflected within the controlling caselaw." <u>Id.</u> at 1339. <u>See</u> <u>Wheat v. United States</u>, 860 F.2d 1256, 1260 (5th Cir. 1988); <u>Wakefield v. United States</u>, 765 F.2d 55, 59-60 (5th Cir. 1985).

---

[3]     A number of other circuits employ a maximum recovery rule in reviewing damages awards. <u>See, e.g.</u>, <u>Shockley v. Arcan, Inc.</u>, 248 F.3d 1349, 1362 (Fed. Cir. 2001); <u>Koster v. Trans World Airlines</u>, 181 F.3d 24, 36 (1st Cir. 1999); <u>Spesco, Inc. v. General Elec. Co.</u>, 719 F.2d 233, 240-41 (7th Cir. 1983).

The district court applied the maximum recovery rule in this case by relying on a number of state and federal cases applying Texas law in which larger aggregate sums were awarded than the total amount that the court decided to award in this case.[4] None of these awards is officially reported, except for one that was reversed on appeal in a reported decision, on which we therefore do not rely. The same is true of some of the decisions cited by the plaintiffs.[5] We decline to use unreported decisions as benchmarks for this purpose. Unreported decisions generally lack precedential value. See, e.g., Tex. R. App. P. 47.7; 5th Cir. R. 47.5.4; Exxon, Co., U.S.A. v. Banque De Paris Et Des Pays-Bas, 889 F.2d 674, 675 (5th Cir. 1989) ("under Texas law an unreported opinion is not precedential"). Our court has not previously considered unreported decisions when invoking the maximum recovery rule. See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 767 F.2d 1151, 1156 (5th Cir. 1985) (citing "highest reported" awards in relevant jurisdiction); Hansen v. Johns-

---

[4] Texas law controls the measure of damages in this case. See Ingraham v. United States, 808 F.2d 1075, 1081 (5th Cir. 1987); Wakefield, 765 F.2d at 58 ("The components and measure of damages in FTCA cases are taken from the law of the state where the tort occurred.").

[5] One of the unreported state court decisions cited by the plaintiffs was affirmed on appeal in a published decision, but (1) the appellate court's decision states only the plaintiffs' aggregate damages awards, without distinguishing between pecuniary and non-pecuniary components; and (2) each of these aggregate awards is lower than the corresponding aggregate amount for which the Government argues in this case.

Mansville Prods. Corp., 734 F.2d 1036, 1047 (5th Cir. 1984) (award was "substantially greater than any we have discovered in other reported cases") (emphasis added). And from a practical standpoint, the comparability of unreported decisions is hard to judge from the records available. The Lebrons offer a mix of summary reports of verdicts from an unofficial publication, The Blue Sheet of Texas, and attorney affidavits. Use of such hearsay would create more problems than it would solve by provoking irrelevant disputes over the comparability of unreported decisions.

The Government argues for two particular applications of the maximum recovery rule. We address them in turn.

### A. Award to Parents for Loss of Consortium

First, the Government argues that the court's award to Carmen and Antonio Lebron for loss of consortium should be reduced from $3 million ($1.5 million each) to $2 million ($1 million each). In Ingraham v. United States, 808 F.2d 1075, 1078, 1081-82 (5th Cir. 1987), an FTCA case that arose in Texas, a parent was awarded $750,000 for loss of society and other losses arising from severe brain injuries suffered by her child. This court rejected the Government's argument that the $750,000 award was so excessive as to warrant correction on appeal. Id. at 1082. This is the highest award we have found in a reported case for loss of consortium awarded to a parent for non-fatal injuries to his or her child. Cf. Wellborn v. Sears, Roebuck & Co., 970 F.2d 1420, 1427

7

n.13, 1428-29 (5th Cir. 1992) (rejecting challenge to $1.275 million total award to parent under Texas law, arising from death of child in accident, where award included $612,500 award for loss of companionship and society).

The Government, treating <u>Douglass</u> as if that case formulated a rigid cap on application of the maximum recovery rule, suggests we add 33% to the <u>Ingraham</u> award for each parent. This would result in $1 million to each parent. We disagree with the Government's characterization of <u>Douglass</u> because it framed a guideline for invoking rather than a formula for capping recoveries under the rule. <u>Douglass</u>, 897 F.2d at 1343, n.14 (the "rule <u>does not become operative</u> unless the award exceeds 133% of the highest previous recovery in the State") (emphasis added). Nevertheless, the Government's concession is generous, and we agree that the Lebrons' award is too high. We adopt the Government's suggestion to reduce the Lebrons' total loss of consortium award to $2 million.[6]

---

[6] We express no view on whether this amount is unreasonably high in relation to the intangible damages award that we approve for Karina, who indisputably suffered the greater loss. Because the Government has conceded that Carmen and Antonio Lebron's intangible damages award should be reduced to no less than $2 million, the Government has forfeited its opportunity to argue that the award should be lower when considered in relation to their daughter's award for intangible damages. <u>Cf</u>. <u>Roberts v. Williamson</u>, 52 S.W.3d 343, 350-52 (Tex. App. - Texarkana 2001) (affirming awards of $1.235 million to child and parents for intangible losses suffered by child and award of $75,001 to parents for loss of consortium), <u>petition for review filed</u> (Aug. 20, 2001), <u>motion to dismiss denied</u> (Nov. 1, 2001).

**B.    Awards to Karina for Various Intangible Injuries**

Second, the Government argues, relying on <u>St. Paul Med. Ctr. v. Cecil</u>, 842 S.W.2d 808 (Tex. Civ. App.-- Dallas 1992), and <u>Pipgras v. Hart</u>, 832 S.W.2d 360 (Tex. Civ. App.-- Ft. Worth 1992), that the court's award to Karina Lebron for intangible injuries should be reduced from $9 million to $600,000. In <u>Cecil</u>, a case involving serious brain injuries caused to an infant during his delivery, the jury awarded the plaintiffs $25,000 for past physical pain and mental anguish, $50,000 for future physical pain and mental anguish, $25,000 for past physical impairment, and $50,000 for future physical impairment: $150,000 in all for intangible damages. 842 S.W.2d at 811. In <u>Pipgras</u>, a case involving seemingly less serious brain injuries to a four-year-old child, the court rejected challenges to awards of $50,000 for future physical impairment and $250,000 for physical pain and mental anguish. 832 S.W.2d at 365-67.

The intangible awards in <u>Cecil</u> and <u>Pipgras</u> are not precisely analogous to the intangible awards in this case, which were made for categories of injury that overlap with or otherwise differ from the categories of harm articulated by the trial court here. <u>Cf.</u> <u>Douglass</u>, 897 F.2d at 1345. And in neither <u>Cecil</u> nor <u>Pipgras</u> is there an award for disfigurement, a category of noneconomic damages that clearly applies to Karina. <u>Jones v. Wal-</u>

9

Mart Stores, Inc., 870 F.2d 982, 990 (5th Cir. 1989).[7] Moreover, the injuries at issue at least in Pipgras are significantly less severe than the injuries suffered by Karina. With all these qualifications, however, the awards in Cecil and Pipgras permit some comparison.

The $600,000 aggregate figure requested by the Government is based solely on comparison with Cecil and Pipgras. A recent Texas case, however, supports a higher award and undercuts the Governments' proposed reduction, though not the general principle of comparison. In Roberts v. Williamson, 52 S.W.3d 343, 347, 350-51 (Tex. App.–Texarkana 2001), petition for review filed (Aug. 20, 2001), motion to dismiss denied (Nov. 1, 2001), the court rejected challenges to awards for the benefit of a child amounting to $1.235 million in non-pecuniary damages -- $335,000 for past and future physical impairment, $850,000 for physical pain and mental anguish, and $50,000 for disfigurement -- arising from brain injuries analogous to those sustained by Karina in this case. In Williamson as in this case, the brain injuries were sustained in the first days of the child's life. Williamson represents by far the highest reported judgment we have found applying Texas law to comparable facts.

---

[7] The disfigurement in this case is severe. As the district court found, the Government's physician fractured Karina's skull, creating a fist-size cavity filled with tissue and cerebral fluid, and crushed her right eye socket. This damage will never heal. Her posture is slouched, and she is prone to drool because her jaw uncontrollably hangs open.

10

The intangible damages in Williamson are many times as high as those in Pipgras and Cecil, yet the intangible damages awarded by the district court here outstrip the verdict in Williamson by a factor of seven. The purpose of the maximum recovery rule is to bring rough consistency into comparable damages awards. Whether Karina's award is viewed on an item-by-item comparison of specific noneconomic damages components or on an aggregate basis, it is grossly excessive. Horrible as are the facts underlying the judgment, they are not dissimilar to the facts in Cecil and Williamson, and "we find no novel grounds for such a grand departure" in the award of damages. Douglass, 897 F.2d at 1345. While recognizing that a court-ordered remittitur necessarily involves a subjective component, Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983), we conclude that a reduction of Karina's total noneconomic damages award from $9 million to $1.25 million satisfies the maximum recovery rule.

One additional contention raised by the Government requires a response. Noting that the district court failed to explain the reasoning for its specific awards, the Government argues that the district court's noneconomic damages award may have been duplicative of its medical expenses award. In Sosa v. M/V Lago Izobal, 736 F.2d 1028 (5th Cir. 1984), this court concluded that to the extent that certain rehabilitative items were not medical expenses but devices to alleviate physical suffering or

11

mental anguish, they duplicated a separate award for "pain and suffering, bodily injury, mental anguish, and loss of the capacity for the enjoyment of life." Id.[8] This court remanded for a determination of which items were compensable medical expenses and which duplicated the award for pain and suffering. See id.

As in Sosa, we cannot determine from the trial court's opinion in this case whether part of the medical expense award may duplicate part of the awards for intangible harms. For instance, the former award included equestrian and aquatic therapy, which the court described in terms suggesting that it was at least in part compensating for the emotional harms caused by the defendant's negligence. We therefore remand for a determination of which items were compensable medical expenses and which duplicated the intangible awards.

If the district court concludes on remand that the medical expense award and intangible injuries awards are not duplicative, then our remittitur will remain intact. If the district court concludes that the awards are duplicative, it must make appropriate reductions in the awards.

---

[8] The district court had awarded the plaintiff a sum for rehabilitation expenses consisting of "39 items, such as a speaker telephone service, an electric toothbrush, and a beverage holder, that will allow Sosa to perform certain simple tasks on his own and 'make him more comfortable despite his severe injuries.'" Sosa, 736 F.2d at 1034 (quoting district court).

12

**(2)  Whether FTCA § 2675(b) Requires That the $20.6 Million Award to Karina Lebron Be Reduced to the $20 Million Sought in Her Administrative Claim**

In May 1996, the Lebrons filed an administrative claim seeking $14 million on behalf of Karina.  In April 1998, they filed an amended administrative claim for Karina seeking $20 million.  In their original complaint, filed in May 1999, they sought an unspecified amount.  After the Army denied the administrative claim, they moved in February 2000 to amend their complaint to seek $55 million for Karina.  The United States opposed the motion, arguing that the Lebrons had not met the standard set out in 28 U.S.C. § 2675(b), which provides that an FTCA action

> shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

The district court granted the Lebrons' motion.  The court ultimately awarded Karina about $20.6 million.

On appeal, the Government argues that the district court erred in allowing the Lebrons to seek damages in excess of the $20 million specified in her amended administrative claim.  In light of § 2675(b), this contention is correct.  Karina's award can be no more than $20 million.[9]

---

[9]  The Government's brief might be read to suggest that even if our application of the maximum recovery rule, <u>supra</u>, ultimately

13

The plaintiff in an FTCA suit who seeks to exceed his administrative claim has the burden to show that the addition is based on newly discovered evidence or intervening facts within the meaning of § 2675(b). See, e.g., Michels v. United States, 31 F.3d 686, 689 (8th Cir. 1994); Spivey v. United States, 912 F.2d 80, 85 (4th Cir. 1990). To satisfy this burden, the plaintiff must show that the evidence was not "reasonably capable of detection at the time the administrative claim was filed." Low v. United States, 795 F.2d 466, 470 (5th Cir. 1986). In other words, "the information must not have been discoverable through the exercise of reasonable diligence." Id.

In Low, the plaintiff sought $1,275,000 in her administrative claim for injuries done to her son Brian during childbirth. In court, she later sought $12 million for the same injuries. The district court awarded the plaintiff $3.5 million, asserting that the plaintiff had presented newly discovered evidence or intervening facts under § 2675(b) concerning "the extent of Brian's condition, the prospects for his recovery, the

results in an aggregate damages award for Karina of $20 million or less, Karina's damages award must be reduced by an additional $647,488. We reject any such contention. Section 2675(b) merely caps Karina's aggregate damages award. If the award has been reduced below the cap for other reasons, § 2675(b) does not require reducing an award any further. See Reilly v. United States, 863 F.2d 149, 173 n.19 (1st Cir. 1988). Cf. Martinez v. United States, 780 F.2d 525, 530 (5th Cir. 1986) (reading § 2675(b) "to allow plaintiffs to prove damages in excess of the administrative claim, but to forbid the actual recovery to exceed the amount of the administrative claim").

limited extent of any recovery, and . . . his life expectancy."

Id. at 470.  This court disagreed with the district court's reading

of the requirements of § 2675(b).  We concluded that the evidence

cited by the district court did not meet these requirements because

it went only to the precision with which the severity of Brian's

injury could have been known.

> The [new] evidence does not alter the fact . . . that
> when the administrative claim was filed Mrs. Low already
> knew that Brian had cerebral palsy, a seizure disorder,
> and was blind, deaf, and mentally retarded.  There is no
> evidence that these conditions became worse or that other
> conditions developed after the claim was filed. . . .
> This is not a case in which the claimant did not know or
> reasonably could not have known the basic severity of
> Brian's handicap; it was indubitably of grave severity
> and of unknown -- perhaps permanent -- duration. . . .
> [I]f the exact nature, extent and duration of each
> recognized disability must be known before § 2675(b) will
> be given effect, that section will be rendered useless;
> and the government will be unable to evaluate any claim
> made against it without the threat that, if it does not
> settle, its liability may increase substantially.  Such
> matters are of their nature dubious, partaking of the
> uncertainties of life itself in which unexpected deaths
> and equally unexpected recoveries occur.

Id. at 471.  This court remanded for a reduction of the damages

award to $1.275 million.

Low makes clear that new information cannot surmount the

bar created by § 2675(b) if the information merely concerns the

precision with which the nature, extent, or duration of a

claimant's condition can be known.  Information can be newly

discovered evidence or an intervening fact, however, if it sheds

new light on the basic severity of the claimant's condition -- that

15

is, if it materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed. See, e.g., Fraysier v. United States, 766 F.2d 478, 481 (11th Cir. 1985), cited in Low, 795 F.2d at 470. Requiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case. This encourages settlement of FTCA cases in accordance with the statute's purposes. See Low, 795 F.2d at 470-71; Reilly v. United States, 863 F.2d 149, 172-73 (1st Cir. 1988).

In this case, the district court concluded that when the administrative claim was filed, "it was impossible to determine the nature and extent of [Karina's] injuries because reliable cognitive and motor/sensory tests could not be conducted until Karina was four to five years old." The court pointed to evidence that a life care plan could not be drafted for Karina until she was about five. Citing tests and an examination conducted after the filing of the claim, the court concluded that "Karina's condition was significantly worse than believed when the administrative claim was filed. . . . Karina's needs and the care and treatment she will require will cost nearly twice what was previously expected. It is not just the valuation of those needs, but the kind and frequency of care that have increased."

This court rejected similar reasoning in Low, a case that is practically indistinguishable. Karina's original administrative

16

claim shows that the Lebrons knew that Karina's condition was "indubitably of grave severity and of unknown -- perhaps permanent -- duration" and that they expected additional impairments to develop.  Low, 795 F.2d at 471.  The claim enumerates a number of serious injuries sustained during Karina's "traumatic" delivery, including skull fractures, hemorrhages, and brain contusions; states that she "developed seizures at four hours of life" and "suffers from spasticity, poor head control and . . . developmental delay;" and predicts "additional permanent physical and mental impairments."  In sum, in this case, "as in Low, the basic severity of the child's condition was known and recited in the claim form." Reilly, 863 F.2d at 172.  Compare United States v. Alexander, 238 F.2d 314, 318 (5th Cir. 1956), cited in Low, 795 F.2d at 470.  A reasonable worst-case prognosis would have predicted what actually came to pass.  It follows that § 2675(b) barred the Lebrons from seeking damages in excess of the $20 million stated in the administrative claim.[10]

---

[10]    Because this conclusion is required by what the Lebrons knew or reasonably could have known at the time Karina's original administrative claim was filed, it is unnecessary to decide the merits of the Lebrons' contention that under § 2675(b), the relevant question is what they knew or reasonably could have known at the time they "present[ed]" the claim, not what they knew or could have known at the time they filed suit (or at some other moment in the "administrative phase" of this litigation).  See, e.g., Husovsky v. United States, 590 F.2d 944, 954 & n.24 (D.C. Cir. 1978).  But see Spivey, 912 F.2d at 83, 85-86.  Even if this contention is correct, it would not affect the outcome of this appeal.

17

**(3) Whether the District Court Erred in Awarding All of the Guardian Ad Litem's Fees as Costs Taxable to the Government**

Karina's GAL, Gary Zausmer, is an attorney and a shareholder in a large and well-known law firm who has experience in litigation concerning brain injuries. In August 2000, Zausmer submitted a report and fee application seeking $260,000 for past and future services. According to the district court, the services provided by Zausmer included "monitoring depositions; reviewing pleadings, medical records and evidence; meeting with Karina Lebron's doctors; preparing for examination of witnesses; drafting responses to certain government motions; and preparation for trial."[11] Zausmer's report stated that Zausmer had already spent between 170 and 200 hours of time on the matter, "including approximately 75 hours in combined trial preparation and participation in a four day trial," and that "additional proceedings in this action, including appellate work, may approximate and conceivably exceed 100 hours." The report also

_____

[11] Zausmer's report indicates that his services also included preparing for and conducting examination and cross examination of witnesses, as well as "provid[ing] argument to the Court to protect the interests of Karina Lebron."

The report also indicates that Zausmer regarded some or all of his services as legal work not much different from legal work that he performed on behalf of clients other than Karina. "Substantial hours and efforts, in lieu of the performance of <u>other</u> legal work on behalf of <u>other</u> clients, were devoted to pre-trial preparation, depositions, mediations, . . . etc. and ultimately trial -- all as the court-appointed Guardian <u>ad litem</u> for Karina Lebron." (Emphasis added.)

stated that over "75 hours of additional time has been devoted by legal assistants and associates of this law firm to assist the undersigned." The report did not include the documentation then required by local court rules to support claims for attorney's fees. The district court approved the application, concluding that the entire expense of Zausmer's services should be taxed against the Government as costs.

The district court did not distinguish which part of Zausmer's fees were costs and which part were legal fees to be subtracted from the recovery. The court acknowledged that many of Zausmer's services were "legal or quasi-legal" in nature, yet the court concluded that Zausmer had provided them "as an officer of the Court and not as an attorney." Any GAL would have provided the services, the court said, even if the GAL had not been a licensed attorney. The court did not explain how a person who was not a lawyer could have provided Karina with legal services.

When the same person acts "as both a minor's guardian ad litem and as his attorney ad litem, only the person's expenses in the former role are taxable as costs under Fed. R. Civ. P. 54(d)." Gibbs v. Gibbs, 210 F.3d 491, 506 (5th Cir. 2000) (citing duPont v. Southern Nat'l Bank, 771 F.2d 874, 882 (5th Cir. 1985)). "His fees and expenses in the role of attorney ad litem would be treated as any other attorneys' fees." Id. Under the American Rule, "the prevailing litigant ordinarily may not collect attorney's fees from

19

the loser."  Sanchez v. Rowe, 870 F.2d 291, 293 (5th Cir. 1989) (affirming denial of attorney's fees to plaintiff in FTCA action). Thus Zausmer's expenses as attorney ad litem must be paid from Karina's recovery.  See Gibbs, 210 F.3d at 506.  To apply this rule correctly, the district court was obliged to determine which of the GAL's expenses related to his role as GAL and which related to his role as legal counsel for the children.  See id. at 507-08 (remanding for such a determination); duPont, 771 F.2d at 882 & n.7, 888 (same); Franz v. Buder, 38 F.2d 605, 607-08 (8th Cir. 1930) (same).

This rule applies even though Zausmer was not formally named Karina's attorney ad litem.  When a GAL provides legal services to his ward, they should be treated the same as if they had been provided by any other attorney.

> The guardian ad litem is frequently not an attorney and if legal services are required, he must seek and employ counsel.  Counsel obtained thereby on behalf of a ward or incompetent is in no different circumstance from counsel for any other litigant.  An attorney who serves as both legal counsel and guardian ad litem does not thereby acquire any greater right to recover his fees than have his brethren who are hired directly by a litigant.

Gibbs, 206 F.3d at 507 (citations omitted) (quoting Kollsman v. Cohen, 996 F.2d 702, 706 (4th Cir. 1993)).  For the same reason, it makes no difference that Karina had separate retained counsel in this case.  Were it otherwise, a GAL could get the expenses of his legal work reimbursed as costs rather than fees by the simple expedient of hiring a second attorney to serve as nominal outside

20

counsel. The question is not one of titles; it is whether the GAL provided the minor with "the ordinary services of an attorney." duPont, 771 F.2d at 882. At least some of Zausmer's services appear to have been legal.

District courts have discretion in determining which expenses fall on which side of the line between costs and legal fees in any particular case. Cf. Gibbs, 210 F.3d at 506-08. In this case, however, the district court overlooked that the work done by Zausmer and other attorneys at his law firm went far beyond work reimbursable as costs that is done to assess a minor's claims and to decide among possible courses of action on behalf of the minor. See id. at 507 (GAL's initial task in ordinary case is "to assess his wards' potential claim of entitlement and decide what course of action should be taken on behalf of his wards, i.e., litigate, settle or waive their claim"); id. ("The guardian ad litem's presence is necessitated by the litigation and it is his duty to determine policy regarding litigation.") (quoting Kollsman, 996 F.2d at 706).

Because Zausmer was successful in his efforts to obtain recovery for Karina, compensation for his legal services chargeable as fees should be awarded from her recovery. Gibbs, 210 F.3d at 506. The district court must re-evaluate which of Zausmer's expenses are chargeable as fees and which are chargeable as costs.

21

## CONCLUSION

We **VACATE** in part and **REMAND**, directing the district court in accordance with this opinion (1) to reduce certain of the damages awards in the manner specified above; (2) to clarify whether portions of the medical expenses award are duplicative; (3) to apply a cap of $20 million to Karina's aggregate recovery; and (4) to award Zausmer fees and costs anew after calculating compensation due for Zausmer's legal services.

**VACATED** and **REMANDED** with instructions.

22