ANN D. BROWN ET AL. v. P. C. CANTERBURY ET AL.

No. 1707.    Decided November 6, 1907.

**1.—Execution Sale—Title of Plaintiff in Execution.**

A purchaser at execution sale, though taking as a rule, only the interest of the defendant in execution in the property, will in some instances acquire the interest of the plaintiff as well as of the defendant, as where the plaintiff held the legal title to secure an indebtedness for enforcement of which the suit was brought.    (Pp. 92–94.)

**2.—Same—Vendor and Vendee—Superior Legal Title.**

The vendor of land, who had retained in himself the legal title by reserving in his conveyance an express lien to secure several purchase money notes, sued the vendee upon one of such notes, obtained personal judgment, without decree of foreclosure, thereon, and levied on and sold the land so conveyed. Held, that his superior legal title passed thereby to the purchaser at such execution sale, and those holding under the latter could recover the land in trespass to try title against those holding under deeds from the vendee recorded before the institution of suit on the purchase money note, to which they were not made parties. (Pp. 89–94.)

**3.—Same—Cases Distinguished, etc.**

Vieno v. Gibson, 85 Texas, 432, followed Fisher v. Foote, 25 Texas Supp., 311; Myers v. Paxton, 23 S. W. Rep., 284; Summers v. Hancock, 23 Texas, 150, distinguished.    (Pp. 92–94.)

Questions certified from the Court of Civil Appeals for the First District, on error from Harris County.

*C. L. Bradley* and *Fisher, Sears & Campbell,* for plaintiffs in error.—If it be conceded, for the sake of argument, that the judgment in the case of J. S. Holman v. Tarpley & Portis was based on one of the purchase money notes, to secure which a vendor's lien was reserved in the deed from Holman to Portis & Tarpley; nevertheless, the execution sale under the judgment did not pass the legal or superior title to Bagby. The judgment was not a foreclosure of the vendor's lien, but a mere personal judgment, and, as Portis & Tarpley had conveyed the land and the deed from them to Baldwin was on record before the suit and Baldwin was not a party to the suit, Bagby, who purchased at the sale under the judgment, and the defendants, who claim under him, took no title to the land whatever as against Baldwin. Myers v. Paxton, 23 S. W. Rep., 284; Bartley v. Harris, 70 Texas, 181; Black v. Black, 62 Texas, 298; Byler v. Johnson, 45 Texas, 517; Roeder v. Robson, 20 Texas, 765; Ballard v. Carter, 71 Texas, 161; Roberts v. Lovejoy, 60 Texas, 253; Gardener v. Griffiths, 93 Texas, 358; Coddington v. Wells, 59 Texas, 49.

A purchaser at execution sale acquires no better title than was held by the defendants in execution. Paschal's Digest, art. 3795; Barnett v. Vincent, 69 Texas, 688. The purchaser at execution sale takes title of the defendant in execution only. 25 Am. & Eng. Enc. of Law, 823, and cases cited.

The defendants are confined to the rights acquired at the execution sale. If the judgment on which that sale was based was predicated on a purchase money note, the vendor's lien was not asserted,

and the superior title did not go to Bagby. Myers v. Paxton, 23 S. W. Rep., 284; Fisher v. Foote, 25 Texas Supp., 311; Bartley v. Harris, 70 Texas, 181.

The subvendee Baldwin had the legal title. Mason v. Bender, 97 S. W. Rep., 718; Black v. Black, 62 Texas, 298.

We contend that when Holman sued on the purchase money note— if such he did—against Portis & Tarpley, his vendees, he thereby deprived himself, and, of course, any one claiming through him, of the right to claim the land. Roeder v. Robson, 20 Texas, 765; Gardener v. Griffiths, 93 Texas, 358; Bartley v. Harris, 70 Texas, 181; Roberts v. Lovejoy, 60 Texas, 255; Summerhill v. Hanner, 72 Texas, 224.

Holman reserved a lien to secure three purchase money notes. If he had assigned one of these notes to Bagby it is well settled that the title to the land would not pass by an assignment of the note, "and for that reason the assignee can not recover possession of the land under any circumstances." Hamblen v. Folts, 70 Texas, 135. That the assignee of the note has no title to the land is settled. Farmers' Loan & Trust Co. v. Beckley, 93 Texas, 273, and cases cited.

We think the case of Summers v. Hancock, 23 Texas, 150, is decisive of the question that Bagby, and those holding under him, having purchased under an execution sale, derived no benefit from the vendor's lien reserved in the deed from Holman to Portis & Tarpley.

*Ewing & Ring, G. H. Pendarvis, Cobbs & Hildebrand,* and *Ross & Wood,* for defendants in error.—Notwithstanding discordant statements to be found in some early sporadic cases, it is now firmly settled that a subvendee occupying the attitude of Horace Baldwin, who is not harmed by a judgment against the vendees to which he is not a party, is not bettered by it, but occupies the exact position he did before, so that a foreclosure does not have the effect as to him to confirm the superior title in the vendees. Gardener v. Griffiths, 93 Texas, 358, 359, and cases cited; Thompson v. Robinson, 93 Texas, 165; Douglass v. Blount, 95 Texas, 382; Hamblen v. Folts, 70 Texas, 133, 136; Russell v. Kirkbride, 62 Texas, 456, 457; White v. Cole, 87 Texas, 500.

That the retention of the lien in the deed from J. S. Holman to Portis and Tarpley rendered the deed executory, keeping the legal title in the vendors, and granting to the vendees the mere equity of getting the title on payment of the unpaid purchase price, which could not be enforced in an ordinary action of trespass to try title, but only under appropriate allegations coupled with an offer to do equity by payment of the unpaid purchase price is too well settled to justify elaboration. Parks v. Worthington, 39 Texas Civ. App., 421, and cases cited; McCampbell v. Durst, 15 Texas Civ. App., 523; Webster v. Mann, 52 Texas, 416; White v. Cole, 87 Texas, 502; Stone Land & Cattle Co. v. Boon, 73 Texas, 548; Crafts v. Daugherty, 69 Texas, 481; McPherson v. Johnson, 69 Texas, 487; Hale v. Baker, 60 Texas, 219; Russell v. Kirkbride,

62 Texas, 456, 457; Ellis v. Hannay, 64 S. W. Rep., 686; Strain v. Walton, 11 Texas Civ. App., 627.

The sale of the land to satisfy one of the purchase notes would estop the vendors to assert claim of lien on it for the others as against a stranger purchasing (Vieno v. Gibson, 85 Texas, 432). It is well settled that, in the case of foreclosure sale and purchase by the original vendors without making subvendees parties, the legal and superior title passes to the purchaser, leaving to the subvendees only the right, as before the foreclosure, to proceed seasonably to get the title by paying the purchase price. Foster v. Powers, 64 Texas, 247; Pierce v. Moreman, 84 Texas, 596. The purchaser at such sale, by estoppel, is subrogated to the legal title held by the vendors. Peters v. Clements, 46 Texas, 124; Gardener v. Griffiths, 93 Texas, 358, 359.

If Bagby bought as stranger to the title under the rule that all the title of both plaintiffs and defendants in the execution passes to the purchaser, Bagby would necessarily acquire the legal title held by the plaintiff J. S. Holman, and through him, upon the facts appearing, the legal title held by his covendors, they being estopped to claim against the acts of Holman. Burleson v. Burleson, 28 Texas, 415-416; Bigelow's Estoppel (4th ed.), 547; Peters v. Clements, 46 Texas, 124; Gardener v. Griffiths, 93 Texas, 358-359.

Independent of the question of agency, and if Bagby bought for himself as a stranger or third party, Holman's superior title nevertheless passed to Bagby, and from him down to the defendants, both by positive statute and equitable estoppel.

It has been seen that had Holman, the original vendor, foreclosed on the purchase money note instead of obtaining only a personal recovery, the purchase by Bagby at the sheriff's sale, as a stranger or third party, would have carried the superior title to him (Foster v. Powers, 64 Texas, 247, 250; Thompson v. Robinson, 93 Texas, 165, 170; Vieno v. Gibson, 85 Texas, 432, 434). It is but a small step to hold that the same result would follow a sheriff's sale on a personal recovery, especially upon approval of the decision that the same result is reached where the vendor, plaintiff in execution, purchases (Howard v. Hermann, 9 Texas Civ. App., 79, 81-82). This is emphasized by the consideration that no distinction is allowed, in case of foreclosure, between a purchase by the vendor, plaintiff in foreclosure, and the purchase by a third party (Ufford v. Wells, 52 Texas, 612; compare with Foster v. Powers, 64 Texas, 250, and Thompson v. Robinson, 93 Texas, 170). And by the consideration that a personal judgment on a lien debt does not waive the lien (McAlpin v. Burnett, 19 Texas, 497, and cases following it). The conduct of Holman, in actively procuring the sale of the whole land without reservation or restriction and accepting the proceeds of the sale of such, was not silence only, but it was that active encouragement which is the fit subject of estoppel. Waggoner v. Dodson, 96 Texas, 423-424. The estoppel here to be applied is not strictly that of estoppel in pais, but the quasi estoppel by waiver, or by election and acquiescence, which requires neither misrepresentation nor ignorance of

the facts, but proceeds simply upon conduct inducing a reasonable belief that a known right is waived or will not be insisted upon. Bigelow's Estoppel, pp. 633, 642 and 661. It is often laid down that where a person stands by and allows his land to be sold as that of another, without disclosing his title or by conduct inducing the other to suppose he will not rely on it, he is afterwards estopped to set up his title to that person's prejudice. 14 Am. & Eng. Ency. of Law, p. 84; 11 id., p. 422; Dooley v. Montgomery, 72 Texas, 429, 432; Freeman's Void Jud. Sales, sec. 50a and cases cited; Fallon v. Worthington, 13 Colo., 559, 16 Am. St. Rep., 231. Thus, where an administrator sold a piece of land as owned by himself as administrator, he was held afterwards estopped to set up a personal interest, although his individual title was apparent from the records. Lindsay v. Cooper, 94 Ala., 170, 33 Am. St. Rep., 105; Ponder v. Moseley, 2 Fla., 207; 48 Am. St. Dec., 194.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified question from the Court of Civil Appeals for the First District, as follows:

"Ann D. Brown and others in the right of the heirs of Horace Baldwin, deceased, brought this action of trespass to try title to recover of C. P. Shearn and others holding in the right of the estate of Charles Shearn, deceased, Blocks 323 and 328 of Charles Shearn's Addition to the City of Houston. Other blocks of that addition were originally included in the suit, but were eliminated prior to the trial and are not here involved.

"The G., H. & S. A. Railway Company and the Southern Pacific Company, two of the defendants, disclaimed as to all the land sued for except block 323 and as to that pleaded not guilty and limitation of three, five and ten years. These companies also vouched in those occupying the relation of warrantors, but no question arises as to them on this appeal. The other defendants pleaded not guilty.

"The cause was tried without a jury and resulted in a judgment for defendants.

"The facts are as follows: In December, 1837, the co-owners with J. S. Holman executed and delivered to him a power of attorney to sell 100 acres of land owned in common by them, of which the land in controversy is a part.

"Pursuant to this, on June 16, 1839, Holman for himself and as attorney in fact for his associates sold and conveyed the same 100 acres to Portis and Tarpley in consideration of $1,300 evidenced by four notes for $325 each, due respectively in six, twelve, eighteen and twenty-four months from date, the lien being retained in the deed.

"On July 27, 1839, Portis and Tarply sold and conveyed to Manly Sexton a distinct 50 acres out of the 100 acres above named and the land in controversy is a part of this 50 acres. This deed recited a cash payment of $1,000. On the same day Manly Sexton sold and conveyed the same 50 acres to Horace Baldwin for a recited cash

consideration of $3,500, the deed also reciting that the land was unencumbered.

"The plaintiffs were shown to be the owners of such title as Horace Baldwin had.

"In 1841 J. S. Holman brought suit against Portis and Tarply on a note for $325 and procured personal judgment thereon. No lien was either foreclosed or asserted. Upon this judgment execution issued, the return showing among other things that on the refusal of ·the judgment defendants to point out property for levy the writ was levied on the 100 acres first mentioned herein, the same having been pointed out by Thomas M. Bagby, 'agent of Holman.'

"Thereafter on October 4, 1842, the land was duly appraised, advertised and offered for sale by the sheriff. His return further shows that it was sold to Thomas M. Bagby on a bid of $266.66, but that Bagby had failed to comply with his bid, so the execution and sheriff's deed which the sheriff had prepared were returned to the clerk of the court.

"The records of Harris County show the record of a deed of date October 4, 1842, from the sheriff of Harris County to Thomas M. Bagby purporting to convey the land so sold at sheriff's sale. This deed purports to have been proved for record by a subscribing witness thereto. There is no direct evidence that it was ever delivered by the sheriff or that Bagby ever complied with his bid. We find, however, that it was in fact delivered.

"On November 16, 1844, Thomas M. Bagby sold and conveyed to Charles Shearn (by deed which declared that the land was his own) the 100 acres mentioned above and the defendants deraign their title regularly under the deed from Bagby. This deed and the deed from the sheriff to Bagby were placed of record January 11, and January 13, 1845, respectively. The deed from Portis and Tarply to Manly Sexton was recorded on the day of its date.

"The deed from Sexton to Horace Baldwin was recorded August 1, 1839, so that both these deeds were of record long prior to the sheriff's sale under the Holman judgment.

"The claim of Shearn and those holding under him has been continuously and openly asserted without question or challenge from any source until shortly prior to the institution of this suit in 1901. They have paid the taxes and as early as some time between 1860 and 1870 the land was platted into lots and blocks by Shearn as an addition to the city of Houston. Horace Baldwin lived in the city of Houston until about 1850 and died shortly thereafter in Galveston. His heirs, or some of them, have lived in Houston ever since. No taxes appear to have been paid under the Baldwin claim.

"Homes have been built on parts of the land under the Shearn claim and the railway companies have erected shops and terminals on parts of it claimed by them and have so held for so long that they have title under the statute of limitations of ten years against all the plaintiffs except those under coverture.

"The property was not inventoried as a part of Baldwin's estate

but such force as this has is modified by the further fact that he died in Galveston and that other property apparently belonging to him was also omitted from the inventory. All the parties and witnesses to these transactions are dead.

"The papers in the cause of Holman v. Portis & Tarply have been lost or destroyed and such facts with reference thereto as were shown upon the trial appeared from the judgment and execution dockets and the testimony of a witness who had seen the note and execution with its return. The note forming the basis of that suit is shown only by circumstances to have been one of the series of vendor's lien notes in question, but it recited that it was executed in payment for land. It was shown that another suit was subsequently brought by Holman against Portis & Tarply on a note for like amount and a lien was therein asserted. The papers are lost and it only presumptively appears that that note was one of the series. The judgment rendered on this last was one of foreclosure and execution and order of sale were returned *nulla bona*. These purchase money notes have never been paid.

"The appellants contend that as Baldwin, the subvendee of Portis and Tarply, was not made party to the suit of Holman under which the land was sold to Bagby, and as the defendants in that judgment had parted with all their interest in the 50 acres in question, nothing passed by the sheriff's deed except the 50 acres not sold by Portis and Tarply and that the judgment in no respect bound Baldwin. Further, that as the judgment sought by Holman in his suit on the $325 note was personal and as he did not choose to put in issue his vendor's lien the superior title remained in Holman and his co-owners and that after this lapse of time the vendor's lien notes which gave life to that title should be conclusively presumed to have been discharged.

"The appellees seek to sustain the judgment upon the ground,

"First. That the sale to Bagby under the Holman judgment passed to the execution purchaser whatever rights Holman had in the land levied on and sold, and therefore Bagby became the owner of the superior title retained by the vendor's lien in the deed to Portis and Tarply.

"Second. That the facts authorized the presumption that Bagby purchased at execution sale as the agent of Holman, the bid being credited on the execution, from which it follows that the position of Holman, the holder of the superior title, was not changed and the right remained in Baldwin, unaffected by the judgment and execution sale, to discharge the lien by timely action and perfect his rights, which he did not do, which the claimants under him do not now offer to do, and which they would not be permitted to do at this late day.

"The trial court held as an inference of fact that Bagby acted as agent of Holman in the purchase at execution sale; that the vendor's lien notes remained undischarged and rested his judgment upon the theory embodied in appellee's second contention.

"This court held that the evidence did not present the issue of Bagby's agency for Holman in making the purchase at execution

sale and that the superior title retained by Holman did not pass to Bagby by that sale.

"Upon this conclusion we reversed the judgment and remanded the cause. The case is now pending before us on motion for rehearing. We respectfully certify for your decision the following questions:

"First. Do the facts stated present the issue of the agency of Bagby to make the purchase at execution sale for and on behalf of Holman, the judgment plaintiff?

"Second. We having found as a fact that Bagby did not act as agent for Holman in making such purchase, did such title as Holman had in the property levied on and sold, nevertheless pass thereby to the purchaser?"

We answer the second question in the affirmative. When Holman sued upon the note for the purchase money of the land, obtained judgment against Portis and Tarply, the original vendees, and caused the land to be sold under that judgment, the purchaser, Bagby, took the title of Portis and Tarply and also the legal title which remained in Holman to secure the debt. Portis and Tarply having sold the fifty acres which appellants claim, had no title to that, but Bagby took the superior title which Holman reserved in the sale to Portis and Tarply. Authorities: Vieno v. Gibson, 85 Texas, 432; Freeman Ex. (3d ed.), sec. 335, p. 1939; Vierheller's Appeal, 24 Pa. St., 105; 62 Am. Dec., 365; Horbach v. Riley, 7 Pa. St. (7 Barr.), 81; Love v. Jones, 4 Watts, 471.

After stating the general rule that a purchaser at execution sale takes only the title of the defendant in execution, Mr. Freeman says: "In some instances, the purchaser acquires the interest of the plaintiff as well as of the defendant. This is so whenever the title of the plaintiff is essential to accomplish the manifest purpose of the sale. Thus, if the sale is made to satisfy a lien held by plaintiff, it transfers such lien; or, in case the plaintiff held the legal title to secure the debt, the sale divests him of that also. Hence, when a sale is made to enforce a vendor's lien, the purchaser acquires the interests both of the vendor and the vendee in the land."

It is the settled law of this State that the original vendor of land under executory contract retains the legal title only to secure the payment of the unpaid purchase money. The legal title being held by Holman to secure the payment of the purchase money notes, this case comes within the exception stated by Mr. Freeman.

In Vieno v. Gibson, above cited, the holder of the notes for the purchase money of a tract of land, sued on one of the notes foreclosing the lien. The land was sold, Gibson purchasing at the sale. Subsequently the plaintiff in that judgment sued upon the other purchase money notes, and sought to foreclose the vendor's lien on the same land, but the court held that he parted with his right to do so by selling the land under the first judgment. This case can be sustained only upon the ground that the legal title held to secure the notes, passed by the first sale.

In Love v. Jones, cited above, the court said: . . . "Where

an executory contract has been made for the sale of land, in pursuance of. which the vendee has obtained the possession thereof, but not the legal title, and the whole of the purchase money having become payable, a part or the whole whereof remains unpaid, the vendor institutes an action founded upon the *contract,* and in affirmance thereof obtains a judgment for the recovery of the money, under which he levies upon and sells the land, he must be considered as selling all that estate in the land, whatever it may be, which he agreed to sell and convey to the defendant. The vendor being the plaintiff in such case, and the owner of the legal estate, has the right to agree that such shall be the effect of the sale by the sheriff under his judgment; and in order that complete justice may be done to all concerned, without delay, and with as little expense as possible, it is right and necessary that the agreement of the plaintiff to this effect should be implied from his having caused the land to be levied on and sold under his judgment.

"By giving this effect to the sale, complete justice is more likely to be done, perhaps, to every one concerned, than could be had in any other course of proceeding that could be adopted."

If this be not the correct rule then Holman could have taken from Bagby the land he bought if Portis and Tarply failed to pay the other notes. Such a result would not be tolerated by the courts.

The Court of Civil Appeals referred to Fisher v. Foote, 25 Texas Supp., 311, and Myers v. Paxton, 23 S. W. Rep., 84, to support their conclusion. In Fisher v. Foote the facts were, in substance, that Fisher sold the land in controversy to one Brown for $500 cash and a note for $500. Brown sold to Taylor for the same price and Fisher took a note from Taylor for $500 releasing the note for like amount from Brown, and conveyed the land to Taylor, who gave a note to Brown for $500 with mortgage on the land to secure that note. There was no reservation of lien to secure the note given by Taylor or to Fisher. Fisher sued upon the note given to him—Brown was not a party—and caused the land to be sold at which sale Fisher purchased. Brown foreclosed his mortgage and caused the land to be sold under that decree. Foote became the purchaser. Brown's decree foreclosing the mortgage was entered before the sale under Fisher's execution. The Supreme Court decided the case upon the priority of the mortgage lien over the judgment lien. The court said: "The judgment lien arose subsequently to the giving of the mortgage, and of course was subordinate to that, and the purchaser at the sale under the judgment took the title subject to the lien of the mortgage." 25 Texas Supp., 317. The question now under consideration was not before that court. It is true the court referred to the matter in this language: "The purchaser at the execution sale acquired no right or interest by his purchase, as against the title of the purchaser at the sale under the decree of foreclosure of the mortgage. Even if the vendor's lien might be enforced by execution upon the judgment, still being a secret lien, it could not be set up against a purchaser of the land *bona fide,* without notice of the lien; and such the plaintiff appears to have been." In using that language the court had in

mind only the vendor's lien and did not in the remotest sense refer to the title reserved to secure the lien.

It will be seen that the reason given by the court why Fisher did not acquire the equity of redemption was, that it had been foreclosed under the mortgage. In that case, Fisher parted with the legal title when he deeded the land to Taylor, therefore he had no title to transmit and the question we have could not have arisen.

The question in hand was not involved in Myers v. Paxton. Judge Williams said: "The charge should have been given, and the decision of the case should have been made to depend upon the issue whether or not the land was the homestead of Freeland at the date of the levy." 23 S. W. Rep., 284.

It is apparent that the issue involved here did not arise in that case. In fact the plaintiff in the execution did not have the legal title to the land, and therefore it could not have passed by the sale.

Counsel for appellant cite Summers v. Hancock, 23 Texas, 150, as conclusively settling the question. In that case W. J. Ryan transferred a note given to him by Hancock for the land in question, to M. K. Ryan, who sued W. J. Ryan and Hancock, and obtained judgment under which the lots were sold and bought by Slayton. The Summers were not parties to the suit. W. J. Ryan gave bond for title to Hancock, and when the latter sold to Summers, by agreement, between the parties, W. J. Ryan made a deed to the Summers who gave the note sued upon. Summers pleaded failure of consideration alleging that the sale under the execution conveyed the superior title to Slayton, who purchased at the sale. It is patent that the issue presented here did not arise, because the legal title was vested in Summers by the deed from W. J. Ryan, and M. K. Ryan, the assignee of the purchase money notes, the plaintiff in the execution, had no title, legal or equitable.

Since Bagby took the legal title of Holman under the sale, it is unnecessary for us to answer the first question. Whether Bagby bought for Holman or not becomes immaterial.