In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00097-CV
______________________________


LISA PARKER, INDIVIDUALLY AND ON BEHALF OF 
KRISTOPHER "CODY" PARKER, Appellant
Â 
V.
Â 
CCS/MEADOW PINES, INC., Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2003-2623-CCL2


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Kristopher "Cody" Parker, while a patient at Meadow Pines Hospital, a private mental health
hospital in Longview, allegedly suffered injuries related to restraints used on him. After suit


 and
the passage of an appropriate time period,


 the defendant Hospital moved for, and received, dismissal
of the lawsuit because of Parker's failure to file an expert report under Section 74.351 of the Texas
Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 74.351 (Vernon
2005).
Â Â Â Â Â Â Â Â Â Â Â Â Parker's appeal asserts the trial court erred by dismissing Parker's lawsuitâbased on an
apparent finding that Parker alleged only "healthcare liability claims"âand also by awarding
attorney's fees to the Hospital. We conclude (1) Parker's claims are "healthcare liability claims" as
used in the statuteâso the dismissal was properâand (2) the attorney's fee award was proper. For
that reason, we affirm the judgment of the trial court.
Â Â Â Â Â Â Â Â Â Â Â Â The trial court's decision to dismiss a case under Section 74.351(b) is reviewed for abuse of
discretion. Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001). An abuse of
discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference
to any guiding rules or principles. Jones v. Christus Health Ark-La-Tex, 141 S.W.3d 790, 792 (Tex.
App.âTexarkana 2004, no pet.). A trial court does not abuse its discretion simply because it may
decide a matter within its discretion differently than an appellate court. Id. A trial court, however,
has no discretion in determining what the law is or in applying the law to the facts. Id. Thus, a
"clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of
discretion . . . ." Id.
Â Â Â Â Â Â Â Â Â Â Â Â If a plaintiff's cause of action is a healthcare liability claim, and if the plaintiff fails to file an
expert report within the statutory time period, a trial court does not abuse its discretion by dismissing
the case with prejudice. Id. If, however, the plaintiff's claim is not one for healthcare liability, or
if the trial court dismissed in the erroneous belief that the plaintiff had failed to file an expert report,
then the trial court abused its discretion, and the dismissal must be reversed. Id. Whether a cause
of action advances a healthcare liability claim is a question of law to be reviewed de novo on appeal. 
Jones, 141 S.W.3d at 793.
(1)Â Â Â Â Â Â Â Parker's Claims Are "Healthcare Liability Claims" as Used in the Statute
Â Â Â Â Â Â Â Â Â Â Â Â Section 74.351(a) provides a healthcare liability claimant must file an expert report and
curriculum Â vitae Â within Â 120 Â days Â after Â filing Â the Â claim. Â Tex. Â Civ. Â Prac. Â & Â Rem. Â Code
Ann. Â§ 74.351(a). If a required expert report has not been served by the 120-day deadline, on proper
motion by the defendant, the trial court is required to dismiss the action with prejudice and award
reasonable attorney's fees and court costs incurred by the defendant. Tex. Civ. Prac. & Rem. Code
Ann. Â§ 74.351(b). Section 74.351(a) applies only to healthcare liability claims. Jones, 141 S.W.3d
at 792.
Â Â Â Â Â Â Â Â Â Â Â Â A healthcare liability claim is 
a cause of action against a health care provider or physician for treatment, lack of
treatment, or other claimed departure from accepted standards of medical care, or
health care, or safety or professional or administrative services directly related to
health care, which proximately results in injury to or death of a claimant, whether
the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. Â§ 74.001(a)(13) (Vernon 2005) (emphasis added).
Â Â Â Â Â Â Â Â Â Â Â Â Parker argues on appeal that, because the claims relate to nonmedical, administrative,
ministerial, and routine care, which are within the knowledge of laypersons, expert testimony is not
required. To support this argument, Parker cites three cases: Morgan v. Compugraphic Corp., 675
S.W.2d 729, 733 (Tex. 1984); St. Paul Med. Ctr. v. Cecil, 842 S.W.2d 808, 812 (Tex. App.âDallas
1992, no writ); and Golden Villa Nursing Home v. Smith, 674 S.W.2d 343, 349 (Tex.
App.âHouston [14th Dist.] 1984, writ ref'd n.r.e.). But Morgan, Cecil, and Smith, deal with expert
testimony at trial, not pretrial expert reports required by Section 74.351(a). Therefore, we find those
cases inapplicable.
Â Â Â Â Â Â Â Â Â Â Â Â To determine if Parker's claims are healthcare liability claims, we must examine the
underlying nature of the claims. See Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex. 1994); Jones,
141 S.W.3d at 793. We are not bound by Parker's characterization of the claims. Buck v. Blum, 130
S.W.3d 285, 291 (Tex. App.âHouston [14th Dist.] 2004, no pet.). Plaintiffs cannot use artful
pleading to avoid the statutory requirements when the essence of the suit is a healthcare liability
claim. Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004) (negligent credentialling
claim is healthcare liability claim). A cause of action is a healthcare liability claim if, to prove it,
the claimant must establish an applicable standard of care for healthcare providers or if the act or
omission complained of was "an inseparable part of the rendition of medical services." Jones v.
Khorsandi, 148 S.W.3d 201, 206 (Tex. App.âEastland 2004, pet. filed); Buck, 130 S.W.3d at 291;
Rubio v. Diversicare Gen. Partner, Inc., 82 S.W.3d 778 (Tex. App.âCorpus Christi 2002, pet.
granted); Bush v. Green Oaks Operator, Inc., 39 S.W.3d 669, 672 (Tex. App.âDallas 2001, no
pet.); Williams v. Walker, 995 S.W.2d 740, 741 (Tex. App.âEastland 1999, no pet.).
Â Â Â Â Â Â Â Â Â Â Â Â Parker's petition alleges that Hospital employees improperly restrained Cody, failed to have
sufficient staff, failed to properly train staff, violated Cody's rights as set out in the Patient's Bill of
Rights, failed to abide by the Hospital's "own standards in the care and treatment" of Cody, failed
to exercise "due care and caution" as to Cody, and failed to timely and appropriately treat Cody's
injuriesâall claims which are healthcare claims, because proving them would require establishment
of the appropriate standards of care to be used when restraining or otherwise caring for mental
patients. But Parker also alleged Hospital employees abused, neglected, or exploited Cody and then
covered up or misrepresented those wrongsâclaims we will refer to as Parker's "abuse" claims. The
abuse claims bear additional scrutiny.
Â Â Â Â Â Â Â Â Â Â Â Â Even in a medical setting, claims of torts which are not inseparably part of healthcare services
or of "safety or professional or administrative services directly related to health care"


 are not
healthcare liability claims. For example, unwanted sexual advances by a doctor produced claims that
were not healthcare liability claims. See Khorsandi, 148 S.W.3d 201; see also Buck, 130 S.W.3d
285; Rubio, 82 S.W.3d 778; Bush, 39 S.W.3d 669.
Â Â Â Â Â Â Â Â Â Â Â Â If employees of the Hospital abused Cody in some way unrelated to his course of care or
treatment, such as by assaulting him outside of efforts to care for or to restrain him for safety
purposes, then claims for such acts would not be healthcare liability claims. But we have reviewed
the petition and find, even with a liberal reading of the pleading, no allegations of any act committed
by anyone who had turned aside from the Hospital's mission to care for and restrain Cody during his
course of care. All of Parker's claims would require reference to the standards by which mental
health institutions restrain patients. See Jones, 141 S.W.2d at 794. Accordingly, the entirety of
Parker's suit is properly characterized as one claiming healthcare liability.
Â Â Â Â Â Â Â Â Â Â Â Â Because Parker never filed a medical expert report, the trial court, on the Hospital's motion,
was required to dismiss the action with prejudice. See id.
(2)Â Â Â Â Â Â Â The Attorney's Fee Award Was Proper
Â Â Â Â Â Â Â Â Â Â Â Â The trial court awarded the Hospital $9,000.00 in attorney's fees. Section 74.351(b)(1)
provides that, if an expert report has not been served within the period specified, the trial court, on
a proper motion, shall award attorney's fees and costs of court to the affected party. Tex. Civ. Prac.
& Rem. Code Ann. Â§ 74.351(b)(1). We find nothing in Section 74.351(b)(1) dictating the timing
of a trial court's award of attorney's fees. Parker cites no authority to support the contention that the
trial court deferring a finding on the Hospital's attorney's fees was improper,


 nor did this Court find
any authority to support Parker's argument. The trial court did not abuse its discretion by awarding
attorney's fees in the manner it did.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â April 14, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â June 28, 2005



->









 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-11-00012-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  GREGG WILLIAMS,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  NATIONSTAR MORTGAGE, LLC, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the County
Court at Law No. 2

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Gregg County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court No. 2009-1576-CCL2

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

I.Â Â Â Â Â Â Â Â Â  Facts and Procedural
Background

Â Â Â Â Â Â Â Â Â Â Â  Gregg
Williams, bidding $9,000, was the high bidder at a trusteeÂs foreclosure
sale.Â  Unknown to him, the property was
encumbered by an alleged first lien of $148,800 also held by the same
mortgagee, Nationstar Mortgage, LLC.Â  Litigation ensued. 

Â Â Â Â Â Â Â Â Â Â Â  This
saga began when Russell Bird and his wife, Shay Bird, purchased a .547-acre
tract of real property with a house in Gregg County through a warranty deed
with vendorÂs lien dated March 14, 2007.Â 
The deed retained a vendorÂs lien in favor of Nationstar
Mortgage, LLC, securing the payment of two purchase money promissory notesÂone
for $148,800 and another for $37,200Âboth payable to Nationstar.Â  The Birds also executed two deeds of trust,
both dated March 14, 2007, each securing one of the notes.Â  The warranty deed with vendorÂs lien and both
deeds of trust were each recorded, apparently simultaneously, in the records of
Gregg County, Texas, on March 22, 2007, at 4:36:37 p.m.

Â Â Â Â Â Â Â Â Â Â Â  On
March 11, 2008, a notice of trusteeÂs sale was posted by a substitute trustee
referencing the $37,200 lien.Â  The notice
did not reference the $148,800 note or its deed of trust.Â  On April 1, 2008, the substitute trustee
conducted a foreclosure sale, sold the property to Gregg Williams for $9,000,
and conveyed the property without any reservation or mention of the other note
or deed of trust.Â  Williams later
discovered the existence of the $148,800 note and deed of trust on the
property.Â  He demanded that Nationstar release the lien, but Nationstar
refused and commenced nonjudicial foreclosure under
the $148,800 deed of trust. Â Williams
filed suit to quiet title, arguing that he purchased the property free of all
other liens, while Nationstar contended that the
$148,800 deed of trust had priority over the foreclosed note.Â  After a bench trial, the trial court agreed
with Nationstar, and found that the $148,800 lien had
priority and remained on the property.Â 
Accordingly, the trial court entered a take-nothing judgment in favor of
Nationstar.

Â Â Â Â Â Â Â Â Â Â Â  Williams
argues that the trial court erred because: Â (1) the evidence supporting the trial courtÂs
finding of priority was legally and factually insufficient; (2) the trusteeÂs
deed to Williams conveyed all of NationstarÂs rights
to the property; and (3) NationstarÂs nonjudicial foreclosure of one of the notes discharged the
lien against the property on the second note.[1]

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the trial courtÂs judgment. 

II.Â Â Â Â Â Â Â  Legal and Factual
Sufficiency of Lien Priority 

Â Â Â Â Â Â Â Â Â Â Â  The
trial court found that the $148,800 deed of trust was superior to the $37,200
deed of trust.Â  In support of that
finding, the trial court noted that:

the deed of trust recorded . . . at 200706505
securing a promissory note in the amount of $37,200.00 was a second lien and
was inferior to the deed of trust recorded at 200706504 securing a promissory
note in the amount of $148,000.00 [sic]. Â Though both deeds of trust were issued to
secure the repayment of purchase money on the same subject real property, the
deed of trust recorded at 200706505 was recorded second in time and was printed
upon a Second Mortgage form. 

Â 

The court also pointed out that
the warranty deed conveying the property to the Birds specifically referenced
the $148,800 promissory note as the ÂFirst NoteÂ and the $37,200 promissory
note as the ÂSecond Note.ÂÂ  In his first
two points of error, Williams contends that the evidence supporting the trial
courtÂs finding of priority was legally and factually insufficient.Â  

Â Â Â Â Â Â Â Â Â Â Â  Findings
of fact entered in a case tried to the court are of the same force and dignity
as a juryÂs answers to jury questions. Â Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991). Â The trial
courtÂs findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing the legal or factual sufficiency of the evidence supporting a juryÂs
answer to a jury question. Â Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).

Â Â Â Â Â Â Â Â Â Â Â  In
determining legal sufficiency, we analyze Âwhether the evidence at trial would
enable reasonable and fair-minded people to reach the verdict under review.Â Â City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); see also Walker & Assocs. Surveying, Inc. v. Austin, 301 S.W.3d
909, 916 n.4 (Tex. App.ÂÂTexarkana 2009, no pet.). Â We credit favorable evidence if a reasonable
jury could, and disregard contrary evidence unless a reasonable jury could not.
Â Wilson,
168 S.W.3d at 827. Â As long as the
evidence falls within the zone of reasonable disagreement, we may not
substitute our judgment for that of the jury.Â 
Id. at 822. Â In this case, the judge was the sole judge of
witness credibility and the weight given to their testimony. Â Id.
at 819. Â Although we consider the
evidence in a light most favorable to the verdict, indulging every reasonable
inference that supports it, we may not disregard evidence that allows only one
inference. Â Id. at 822.

Â Â Â Â Â Â Â Â Â Â Â  In
our factual sufficiency review, we consider and weigh all the evidence, and
will set aside the verdict only if the evidence is so weak or the finding is so
against the great weight and preponderance of the evidence that it is clearly
wrong and unjust. Â Walker, 301 S.W.3d at 916 n.4.

Â Â Â Â Â Â Â Â Â Â Â  Generally,
different liens upon the same property have priority according to the order in
which they are created.Â  World Help v. Leisure Lifestyles, Inc.,
977 S.W.2d 662, 668 (Tex. App.ÂFort Worth 1998, pet. denied).Â  This rule is known as Âfirst in time is first
in right.Â Â See AMC Mortgage Servs., Inc. v. Watts,
260 S.W.3d 582, 585 (Tex. App.ÂÂDallas 2008, no pet.); Windham v. Citizens NatÂl Bank, 105 S.W.2d 348, 351 (Tex. Civ. App.ÂÂAustin
1937, writ dismÂd).Â 


Â Â Â Â Â Â Â Â Â Â Â  In
this case, we are faced with the unique fact that the two competing deeds of
trust securing the two purchase money promissory notes, as well as the warranty
deed retaining a vendorÂs lien, were recorded in the Gregg County clerkÂs
office on the same day at exactly the same hour, minute, and second.[2]Â  However, the three documents were filed in
specific order and received different recording page numbers. Â The warranty deed was recorded at page number
200706503, the $148,800 deed of trust was recorded at page number 200706504,
and the $37,200 deed of trust was recorded at page number 200706505.Â  The $37,200 deed of trust is printed on a Âsecond
mortgageÂ form, and the warranty deed specifically names the $148,800
promissory note the ÂFirst NoteÂ and the $37,200 promissory note the ÂSecond
Note.Â 

Â Â Â Â Â Â Â Â Â Â Â  Though
there is no guiding caselaw regarding these unusual
factual circumstances, after considering all the evidence, we find that the
evidence supporting the trial courtÂs judgment is within the zone of reasonable
disagreement and is not so weak as to be manifestly wrong.Â  Accordingly, we overrule this point of
error.Â  

II.Â Â Â Â Â Â Â  Williams Takes Title Subject
to the Prior Lien

Â Â Â Â Â Â Â Â Â Â Â  In his second
point of error, Williams contends that he owns the property free of any lien
held by Nationstar because: Â (1) NationstarÂs
lien is invalid because the trusteeÂs deed contains warranties of title, and
therefore, the deed conveyed all of NationstarÂs
rights to the property, including its rights under the $148,800 lien; and (2)
under Puntney v. Moseley,[3]
foreclosing one deed of trust without reserving interest in the other divests Nationstar of all title and interest in the property and
vests it in Williams. 

Â Â Â Â Â Â Â Â Â Â Â  The
validity of a lien on real property is a question of law.Â  Florey
v. Estate of McConnell, 212 S.W.3d 439 (Tex. App.ÂÂAustin 2006, pet.
denied).Â  We review de novo questions of
law.Â  In
re Humphrey, 880 S.W.2d 402, 404 (Tex. 1994) (Â[Q]uestions
of law are always subject to deÂ novo review.Â).

Â Â Â Â Â Â Â Â Â Â Â  On
March 11, 2008, a notice of trusteeÂs sale was posted by the substitute trustee
referencing the $37,200 lien.Â  The notice
did not reference any other note, lien, or deed of trust related to the
property.Â  On April 1, 2008, the
foreclosure sale was conducted, Williams was the winning bidder at $9,000, and
the substitute trustee conveyed the property to Williams through a substitute
trusteeÂs deed. Â The deed states, in
relevant part:

hereby bargain, sell and convey unto the said Grantee
the said hereinbefore described land and premises, together with all and
singular the rights and appurtenances to the same in anywise belonging.

Â 

TO HAVE AND TO HOLD the said property unto the
said Grantee, its successors and assigns forever, in fee simple, and I, the
said Substitute Trustee, acting in the capacity and manner aforesaid, by virtue
of the power vested in me under the terms of said Deed of Trust, do hereby bind
and obligate the said mortgagor, his/her heirs, assigns, executors and
administrators to warrant and forever defend all and singular the right and
title to said property unto the said Grantee . . . .

Â 

The deed failed to reference any
other note, lien, or deed of trust related to the property, and also failed to
reserve any interest on NationstarÂs behalf. 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  The
Warranty is From the Birds Rather than Nationstar

Â Â Â Â Â Â Â Â Â Â Â  Williams
contends that because the deed contained warranty language, it conveyed all of NationstarÂs interests in the property to Williams.Â  While the trusteeÂs deed contains warranty
language, both the trusteeÂs deed and the deed of trust make clear that the
warranties are made by the Birds rather than Nationstar.Â  The trusteeÂs deed states that it binds and
obligates the Âmortgagor . . . to warrant and forever defend . . . the right
and title to said property unto [Williams]Â . . . .ÂÂ  The deed of trust states that in the event of
foreclosure sale, the Â[t]rustee shall deliver to the
purchaser TrusteeÂs deed . . . with convenants of
general warranty from Borrower.Â 

Â Â Â Â Â Â Â Â Â Â Â  When
a borrower executes a deed of trust, the legal and equitable estates in the
property are severed. Â Flag-Redfern Oil Co.
v. Humble Exploration Co., 744 S.W.2d 6, 8 (Tex. 1987). Â As the borrower, the Birds retained the
propertyÂs legal title, and the lender, Nationstar,
held two equitable title interests in the property, one for each deed of
trust.Â  Id. Â Because the warranty is
from the Birds, who hold only legal title, the warranty language has no bearing
on NationstarÂs equitable title interests in the
property.

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Puntney Is Distinguishable
From the Present Case

Â Â Â Â Â Â Â Â Â Â Â  Williams
also argues that because Nationstar held two deeds of
trust on the property and only foreclosed one, without reserving interest in
the other, the trusteeÂs deed conveyed all of NationstarÂs
interest in the property to Williams, including its interest under the $148,800
deed of trust.Â  

Â Â Â Â Â Â Â Â Â Â Â  A
purchaser at a foreclosure sale obtains that title and interest which the
trustee has authority to convey.Â  First So. Props., Inc. v. Vallone, 533 S.W.2d 339, 341 (Tex. 1976); Bonilla v. Roberson, 918 S.W.2d 17, 21
(Tex. App.ÂÂCorpus Christi 1996, no writ) (citing Durkay v. Madco Oil Co., 862 S.W.2d 14, 17
(Tex. App.ÂÂCorpus Christi 1993, writ denied)). Â A trusteeÂs authority to sell the debtorÂs
property interests is strictly limited to the powers and means enumerated in
the deed of trust and those conveyed and required by statute.Â  Winters
v. Slover, 251 S.W.2d 726 (Tex. 1952); Olivares v. Nix Trust, 126 S.W.3d 242
(Tex. App.ÂÂSan Antonio 2003, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  In
support of his argument, Williams relies on Puntney, 237 S.W. 1116, for the
proposition that Âa trusteeÂs deed has the effect of divesting the title of the
mortgagor and vesting it in the purchaser.Â 

Â Â Â Â Â Â Â Â Â Â Â  In
Puntney,
when Bean failed to pay a lien against the property, Moseley, the holder of the
note and deed of trust, foreclosed and sold the property through a trustee,
Muse.Â  Id. at 1117.Â  The purchaser, Puntney, paid with a check, and received a trusteeÂs
deed.Â  Id.Â  However, the check was
refused for insufficient funds, and the owner and trustee filed suit against Puntney, claiming that a vendorÂs lien arose at the time of
sale and that they were entitled to foreclose on the original deed of trust
lien as well as the amount of PuntneyÂs check.Â  Id. at
1118.Â  In response to PuntneyÂs
claims on appeal that Bean was a Ânecessary party to a foreclosure of the lien
to secure payment of the check,Â the trial court held that a vendorÂs lien
arose at the foreclosure sale, that Moseley or Muse could foreclose on said
vendorÂs lien, and that Bean was not a necessary party because the trusteeÂs
sale had the effect to Âdivest the title to the land out of Bean and vest it in
Puntney, and to pay BeanÂs obligationÂ on the
original debt because the trusteeÂs sale was, in effect, a sale by BeanÂs
agent.Â  Id. Â Â 

Â Â Â Â Â Â Â Â Â Â Â  Puntney does not
support WilliamsÂ argument because the Puntney creditor only held one deed of trust securing one
debt and another lien arose at the time of the foreclosure sale.Â  Here, the mortgagee holds two separate notes
and two deeds of trust and it foreclosed on only one of them.Â  In Puntney, the remedies through the vendorÂs lien extinguished
BeanÂs obligations under the original deed of trust because the vendorÂs lien
arose from the foreclosure sale of the original deed of trust.Â  See id.

Â Â Â Â Â Â Â Â Â Â Â  Foreclosure
does not terminate interests in the foreclosed real estate that are senior to
the mortgage being foreclosed.Â  Conversion Props. v. Kessler, 994 S.W.2d
810, 813 (Tex. App.ÂÂDallas 1999, pet. denied) (citing Restatement (Third) of Property: Â Mortgages
Â§ 7.1 (1997)).Â  In fact, the general
rule is that the successful bidder at a junior lien foreclosure takes title
subject to the prior liens. Â Id. (citing W. Mike Baggett, Texas Foreclosure Law & Practice Â§Â 2.69
(1984); 59 C.J.S. Mortgages Â§ 549
(1998); 59A C.J.S. Mortgages Â§ 601
(1998)).Â  The purchaser takes the
property charged with the primary liability for the payment of the prior
mortgage and must therefore service the prior liens to prevent loss of the
property by foreclosure of the prior liens. Â Id.
at 813.Â  

Â Â Â Â Â Â Â Â Â Â Â  As
per our rulings above, the $148,800 deed of trust is a superior lien.Â  It is undisputed that the deed to the Birds,
mentioning two liens, and the $148,800 deed of trust were both of record at the
time of the foreclosure sale and that Williams failed to perform any title
search whatsoever.Â  Therefore, Williams
placed his bid at the foreclosure sale with constructive notice of a superior
lien.Â  We overrule this point of error.

III.Â Â Â Â Â Â  Foreclosure of Second
Lien Did Not Extinguish the First Lien

Â Â Â Â Â Â Â Â Â Â Â  In
his final point of error, Williams argues that the trial court erred by failing
to find that the nonjudicial foreclosure sale of one
note discharged the second noteÂs lien against the property.Â  In support of this argument, Williams relies
upon Vieno v. Gibson, and its progeny. Â That line of cases is distinguishable.Â  

Â Â Â Â Â Â Â Â Â Â Â  In
Vieno v. Gibson, Yoakam
sold a tract of land to Gibson and Rose, who executed two promissory notes
payable to Yoakam or the bearer, secured by a single
vendorÂs lien retained in the deed. Â Vieno v. Gibson, 20 S.W. 717, 718 (Tex. Civ. App.
1892).Â  Yoakam
transferred the notes to Vieno.Â  Id.Â  When the debtors failed to pay the first
note, Vieno filed for, and received, a judgment, and
he foreclosed his vendorÂs lien on the real property.Â  By court order, the property was sold at a
judicial foreclosure sale.Â  Later, Vieno attempted to foreclose his vendorÂs lien on the
second note.Â  Id.Â  The Texas Court of Civil
Appeals held that where two notes are of Âequal dignityÂ and held by the same
party, there could be only one foreclosure sale because the creditor abandoned
the lien on the second note by failing to take measures to reserve it. Â Id. 

Â Â Â Â Â Â Â Â Â Â Â  In
Brown v. Canterbury, the Texas
Supreme Court cited and applied Vieno. Â Brown v. Canterbury, 104 S.W. 1055 (Tex.
1907).Â  A vendorÂs lien was foreclosed on
and the property sold through a judicial sale, and the court held that the
purchaser took the title of the original debtors as well as the legal title
held by the creditor even though the original debtors had conveyed and
encumbered part of the land prior thereto. 

Â Â Â Â Â Â Â Â Â Â Â  In
Alston v. Piper, 79 S.W. 357 (Tex. Civ.
App. 1904), the court cited Vieno, and expanded the ruling somewhat.Â  Alston was the owner and holder of two notes,
one note was secured by a deed of trust, and the other note was secured by a
vendorÂs lien.Â  Id. at 359.Â  Alston brought
separate suits on these notes in the district court, and prosecuted both to
final judgment, together with a foreclosure of the respective liens given to
secure the notes.Â  A foreclosure sale was
held Âunder the first or prior lien.ÂÂ  Id. at 360.Â  When Alston attempted to later foreclose on
another lien he held on the same property, the court noted that Â[i]n ascertaining the character of property and the interest
therein to be sold, [the purchaser at the foreclosure sale] was not required to
look beyond the judgment and order of sale under which he bought,Â and held
that:

when a person holds two claims secured by liens on
the same land, and a foreclosure of one of said liens is obtained by him, and
the property sold thereunder, the purchaser takes the
land discharged of the other lien, and acquires the title of both plaintiff and
defendant in the judgment. Â This is true,
although the purchaser pays less than the actual value of the land, and has
notice at the time of his purchase of the existence of such other outstanding
lien in favor of the judgment creditor, at whose instance the sale is made. 

Â 

Id. at 358 (citations omitted).

Â Â Â Â Â Â Â Â Â Â Â  In
Vieno and Brown, the debt or debts were secured by
a single vendorÂs lien, and absent any reservation of other debt interests,
foreclosure of the lien extinguished, or rendered unsecured, any remaining
obligations.Â  Here, each promissory note
is secured by a separate, recorded deed of trust, and only one of them was
foreclosed, leaving the $148,800 lien still secured by the remaining deed of
trust.Â  The creditor in Alston foreclosed on a prior, superior
lien, thereby abandoning or extinguishing the secondary liens.Â  This case is distinguishable from Alston because, as per our ruling in
this case, Nationstar foreclosed on the inferior
lien, leaving the superior lien intact.Â 
Further, the Vieno
cases are all foreclosures through judicial sale, where an election of remedies
must occur, while in this case, the sale was via nonjudicial
sale.Â  Therefore, we overrule this point
of error.

Â Â Â Â Â Â Â Â Â Â Â  We affirm the judgment of the trial
court.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice


Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  July 27, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  September 1, 2011











[1]In
his brief, Williams also argued that the trial courtÂs prejudgment letter did
not constitute findings of fact and conclusions of law.Â  During oral argument, Williams explicitly
abandoned that argument, and therefore, we do not address it. 





[2]Nothing
in the record indicates exactly how this is possible.Â  Similarly, there is nothing in the record
indicating that the Gregg County clerkÂs office is equipped with a flux capacitor
or other time-altering device. 





[3]237
S.W. 1116 (Tex. Civ. App.ÂÂAmarillo 1922, writ dismÂd).